No. 7.—C. Crow and another, plaintiffs in error, *vs.* Jos. J. Whitworth, defendant in error.

[1.] A debtor having three children, each under fifteen, caused a tract of fifty acres, and a little more, to be laid off from the body of his land, that it might, under the Exempting Act of 1841, be exempted from sale to satisfy a *fi. fa.* against him. The Sheriff, nevertheless, levied the *fi. fa.* on the tract, and sold it : *Held*, that as, by the Act of 1841, the debtor was entitled to have no more than thirty-five acres free from such *fi. fa.* and not entitled to that, unless he first had had it surveyed, and its boundaries notified to the Sheriff, the sale by the Sheriff was a lawful sale.

[2.] The tract aforesaid, had upon it a grist-mill : *Held*, that this, too, prevented it from being exempt, under the Act of 1841.

Ejectment, in Rabun Superior Court. Tried before Judge Jackson, at April Term, 1856.

In September, 1842, an action for slander was commenced in Habersham Superior Court by Joseph S. Whitworth, as next friend of his daughter Julia Ann Whitworth, against Lacy Stewart. At April Term, 1844, of said Court, the suit was dismissed, and judgment entered against Whitworth for costs. On this judgment a *fi. fa.* issued, which, in August, 1851, was levied on lot of land No. 101, in the 13th district of Rabun County—the lot containing 250 acres.

Pending the levy, Whitworth employed the County Surveyor to lay off for him fifty acres, under the Exempting Laws. The tract laid off was 22½ chains square, and contained nearly 51 acres. The Sheriff sold the remaining 200 acres. This sale not satisfying the execution, he afterwards advertised and sold the tract laid off, and Stewart bought. The Sheriff dispossessed Whitworth, and put Stewart in possession.

Whitworth then brought his action of ejectment in Rabun Superior Court, against Crow and Harrison, who were tenants under Stewart. At the appearance term, Stewart was made a co-defendant.

Upon the trial of this suit at April Term, 1856, the facts above stated were proved. There was also testimony, that

pending the levy, Whitworth gave notice to Stewart, the plaintiff in *fi. fa.* to appoint a valuing agent, and Stewart declined. It was proved that the land in dispute was the site of a small grist-mill, at which Whitworth ground for his family use, and for his still, until after he was dispossessed; and had formerly ground for some of the neighbors. It was also proved that Whitworth had three children under fifteen years of age.

Counsel for defendants requested the Court to charge the Jury, that the Exempting Laws do not operate upon executions in suits for *torts*; that the *fi. fa.* under which this land was sold, was founded on a *tort*, and had relation, for the purposes of the Exempting Statutes, to the time charged in the declaration as the time of the alleged *tort*; that if the land was the site of a grist-mill propelled by water, plaintiff was not entitled to recover; that as plaintiff, if entitled at all, derived his right from the Exempting Law of 1841, and was therefore entitled to thirty-five acres only, (twenty for himself, and five for each of his children under fifteen years,) under this declaration, and the proof of the size of the tract laid off, he could not recover; that it was Whitworth's duty to have the land valued by three agents, as required by the Statute; and that the refusal of Stewart to appoint one, did not excuse him from appointing one and applying to a Justice of the district to appoint another; and if he had not done so, he could not recover.

These charges the Court declined to give, and charged as follows:

"This was a case arising under the Poor Man's Law. In his opinion, this law extended to executions in cases of *tort*, but here, it was not necessary to charge to that extent: because, the execution under which this land was sold, being for costs in a slander case against the original plaintiff, is not founded on a *tort*, but on a contract—an implied contract made by a plaintiff when he brings suit to pay costs to the defendant, if he be cast. This contract is made where the action is commenced; and therefore, this case comes under

the Exempting Act of 1841, and not that of 1843. Under that Act, the plaintiff was entitled to thirty-five acres of land. Under this declaration, in which he has claimed fifty acres, and the proof of his having had a little more than fifty acres laid off, he, in strictness of law, perhaps, cannot recover thirty-five acres. But in order to do justice, the Court charges, that he can recover thirty-five acres, if the Jury believe that in other respects, he has complied with the Statute. Upon the question of the mill, the Court charges, that the mill-site which was intended by the Legislature to prevent the exemption, was a mill-site of greater value than the land, and not a little tub-mill on a little insignificant branch up here in the mountains. The true question was, whether the land derived its chief value from the mill-site, or from its adaptation to agricultural purposes; and if the Jury believe from the evidence, that the mill, land, improvements and all was not worth more than $100, they should not be prevented, by such a mill-site being on it, from finding for the plaintiff. As to the valuation, Whitworth had done enough, if he gave notice to Stewart to appoint a valuing agent and Stewart declined. If he had gone on and got a Justice of the Peace to appoint one, and had appointed one himself, a valuation made by these two might have been illegal, and not in conformity to the statute which defendants had insisted should be strictly pursued."

To which charge and refusal to charge, defendants excepted.

The Jury found for plaintiff thirty-five acres of the land in dispute, with costs, and for rent, $116.

At the same term, defendants moved in arrest of judgment on the grounds, that the verdict was inconsistent with the declaration, and that no definite judgment or writ of possession could be founded upon it, and that the wife of plaintiff was not made a party plaintiff to the action. This motion was over-ruled, and defendants excepted.

The Court then passed an order that a writ of possession be issued, requiring the Sheriff to take the County Surveyor

upon the premises in dispute, and have thirty-five acres laid out of said land, and that the Sheriff put plaintiff in possession of the same, leaving the remainder of the land in possession of defendant, and divide and lay off the same with reference to the value, and having the dwelling upon the thirty-five acres. To which defendants excepted.

The plaintiffs also excepted to that part of the Court's charge which fixed the commencement of the action, and not the rendition of the judgment, as the date of the contract to pay costs, he insisting that he was entitled to the fifty acres exempted under the Act of 1843.

By consent, his exceptions were filed in defendants' bill.

AKERMAN, for plaintiffs in error.

MILLICAN, for defendants in error.

*By the Court.*—BENNING, J. delivering the opinion.

The question in this case was, whether the Sheriff had authority to sell the tract of land laid off to be exempt from sale ? He did sell it. And that question depends upon several others, and among them, upon these two : Whether, under the Exempting Act of 1841, when a man having three children, all under fifteen, causes as much as fifty acres of his land to be laid off, the tract or any part of it is exempt from sale to satisfy his debts? Secondly. Whether any part of the land of such a man is exempt from such a sale, if the part has a grist-mill on it?

The Act declares, that "Every white citizen of this State, male or female, being the head of a family, shall be entitled to own, hold and possess, free and exempt from levy and sale, by virtue of any judgment, order or decree of any Court of Law or Equity in this State, founded on any contracts made after the first day of May next," (May, 1842,) "or any process emanating from the same, twenty acres of land, and the

additional sum of five acres for each of his or her children under the age of fifteen: *Provided* that the same, or any part thereof, be not the site of any city, town or village, or of any cotton or wool-factory, saw or grist-mill, or of any other machinery propelled by water or steam." This is declared in the first section of the Act.

The second section of the Act declares, that "When any head of a family shall own a greater quantity of land than that exempted from levy and sale by the provisions of the first section of this Act, that he or she shall procure the County Surveyor to lay off the number of acres so exempted, so as to include the dwelling-house and improvements of the original tract (if there be any thereon.")  "And he or she shall designate to the Sheriff, or other officer in whose hands the process directing a levy and sale may be, the boundary so laid off, and it shall not be lawful for the Sheriff or other officer to levy on or sell the tract so designated."

The third section is as follows : "No land shall be exempted from levy and sale under the provisions of this Act, which derives its chief value from other cause than its adaptation to agricultural purposes." (*Cobb's Dig.* 389.)

These are the parts of the Act from which the answers to the two questions are to be gathered.

Do they make it unlawful for the Sheriff to sell as much as fifty acres, belonging to a man with three children under fifteen, if he has caused the fifty acres to be surveyed, &c. as exempt from sale, for his debts ?

In our opinion they do not. If such a person should cause *twenty* acres for himself, and five for each of his three children—*thirty-five* in all—to be surveyed and laid off, and should designate to the Sheriff the tract so laid off, and the Sheriff should, nevertheless, sell it, then these provisions of the Act would, as we think, render such sale unlawful. But unless the person did all this, the same provisions of the Act would, to our mind, render the sale of any part of his land, by the Sheriff, "lawful." That is the necessary implication, from the closing part of the second section. And the first

section must be taken with the second, and some effect must be given to both, if possible.

The Act provides a mode for valuing the parcel. We do not say that we consider a resort to this mode an indispensable condition to the exemption of the parcel. We rather think it is not. But a compliance with the other requirements of the Act, we think, is, the requirements as to a survey, and a notification to the Sheriff. On a compliance with these, it shall not " be lawful" for the Sheriff to levy. This is what is expressed. On a non-compliance, it shall be lawful for the Sheriff to levy. This is what is implied.

Taking one part of the Act by another, this is the result to which we are led. We should be led to the same conclusion by the argument from the inconvenient, how would it be possible, in any case, for the Sheriff to know what was exempt, unless it was set apart by boundaries, and he was made acquainted with the boundaries ?

[1.] We think, therefore, that for aught that is contained in the Act aforesaid of 1841, it was lawful for the Sheriff to sell the tract.

[2.] We think, too, that if any part of a man's land has a grist-mill on it, that part cannot be exempt from liability to be applied to the payment of his debts. The first section of the Act *expressly* excepts such part from the exempting effect of the Act. And section three cannot, by implication, bring such part within such exempting effect, even though such part do not derive " its chief value" from the mill, but from " its adaptation to agricultural purposes" ; for the implication from that section that would bring such part within the exempting effect of the Act, is not a *necessary* one. And it is a rule that the expressed will of the Legislature is not to be considered as abrogated by any but a *necessary* implication.

It follows, that we think the charge of the Court, so far as it differs from the conclusions to which we have come, was erroneous.

A new trial is therefore granted.

And as these points must make an end of all the other

questions raised in the case, we leave those questions without notice.

It may not be amiss to remark that the question whether, if Whitworth caused as much as fifty acres to be laid off by *mistake*, he is beyond redress in Equity, was not considered by us.