## Case No. 5,746.

### GREELEY v. SCOTT et al.

[2 Woods, 657;[1] 12 N. B. R. 248.]

Circuit Court, N. D. Florida.  May, 1875.

HOMESTEAD LAW OF FLORIDA—WHAT IS INCLUDED UNDER.

1. The constitution of the state of Florida of 1868 reserves to each head of a family free from the claims of creditors, a homestead, without limit as to its value, of 160 acres, when the same is not in an incorporated city or town: *Held*, that the purpose of this provision was to preserve to the debtor. not only his shelter, but his usual means of employment for the support of his family.

2. In the case of a farmer the exemption embraces his house and farm not exceeding the number of acres limited, together with the improvements thereon. But a farmer's homestead would not embrace tenant houses, a sawmill, gristmill, or fullingmill. though erected on a portion of the tract of which the farm is a part.

[Cited in Mouriquand v. Hart, 22 Kan. 415.]

3. A mill owner who has a farm attached to his mill and cultivates it as a secondary business, could hold his residence and mill exempt, but not the farm also.

[Cited in Ashton v. Ingle, 20 Kan. 679.]

4. The owner of a sawmill who followed the business of sawing lumber, and whose mill was adjacent to his residence. would be entitled to hold the same as part of his homestead. But he could not retain as a part of his homestead those portions of the 160 acres of land which were not ancillary to his business as a lumberman.

[This was a bill in equity by J. C. Greeley, assignee of Joseph W. Scott, against Joseph W. Scott and wife and others.]

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

Submitted on motion for injunction. The facts appear in the opinion of the court.

H. Bisbee, Jr., for complainant.

J. J. Finley and E. M. L'Engle, for defendants.

BRADLEY, Circuit Justice. The assignee in this case filed the bill to prevent the debtor and his wife from setting up the right of homestead to a certain tract of land in the neighborhood of Jacksonville, which they claim as such. The whole tract consists of about forty acres in an unincorporated suburb called East Jacksonville, much of which has been laid out into building lots, and on which the bankrupt resides, and has a steam sawmill, which he has operated for many years as his principal business. The constitution of Florida, adopted in 1868, reserves to every head of a family residing in the state, his homestead and $1,000 worth of personal property, free from the claims of creditors. If not in an incorporated city or town, it may be a homestead to the extent of 160 acres of land; if in such city or town, half an acre, without any limit as to value in either case. The reservation, however, is only that of the homestead, and embraces no more, although the party may own more within the prescribed limit of quantity. It is very material, therefore, to know what is meant by and embraced in a homestead. Within the meaning of the constitution of Florida, however it may be elsewhere, it certainly embraces more than a house for a shelter; for it may extend to 160 acres of land, which could never be needed for that purpose alone. As 160 acres of land is the usual quantity for a farm in this country, the policy of the constitution seems to be to allow a man such quantity of land with his house as he is accustomed to use therewith in the pursuit of his occupation. In other words, the object seems to be, not only to preserve to the unfortunate debtor his house for shelter, but his usual means of employment by which to earn his livelihood and support his family. The state as well as the individual himself is interested in his labor and industry, and therefore takes care that he shall not be deprived of the power to employ them.

In the case of a farmer, therefore, it is clear that the exemption embraces his house and farm not exceeding the amount limited; of course it includes (and so the constitution declares) the improvements thereon. Those improvements, however, must be such as to make them properly a part of the homestead, such as outhouses, barns, sheds, wagonhouses, fences, etc. They would not embrace tenant houses, though built on the farm, for these would be no proper part of the farm homestead. They constitute capital separately invested. They produce a revenue of their own, distinct from that of the farm. For the same reason, the farmer's homestead would not include a sawmill, or a gristmill, or a

carding and fullingmill, though erected on a portion of the tract of which the farm is a part. These are separate enterprises in which the farmer has been enabled to invest his surplus capital. They are no part of the farm. If he runs them, he does it as a separate business from that of his farm, and he cannot claim both as appurtenant to and part of his homestead. They constitute the basis of outside and separate industries. A mill owner in like manner may have a farm attached to his mill, and work it as a separate and secondary business. He may claim his mill as a part of his homestead, but not the farm also. Otherwise, by multiplying his branches of business and trade, a man might have a large domain consisting of many establishments, and claim them all as incident to his homestead. This never could have been the intent of the constitution. It would be an unreasonable construction of its terms. Those terms must be fairly construed so as to fully carry out the policy of the constitution, and yet not to nullify all obligations of a debtor to pay his debts. That the preservation of a householder's means of carrying on his business, as well as a house for shelter, is within the constitutional purpose, is evident from the clause relating to city property, namely, that in a city or town the exemption shall not extend to more improvements or buildings than the residence and business house of the owner, showing that the business house as well as residence is included.

But while the cases, which we have supposed, are comparatively easy of solution, a great many others will arise presenting greater difficulty and embarrassment. The amount of property, which the necessary interpretation of the exemption will sometimes embrace, will undoubtedly appear as a great hardship and injustice to creditors. It is a great stride from that state of things in which the sanctity of a debt induced the legislature not only to take from the debtor all his property, but even his liberty itself. It may be a question whether it is not carrying the principle of exemption too far for the public welfare. It is true that the farmer without his farm, the blacksmith without his forge, the miller without his mill, the trader or business man without his shop, in fine, any citizen without his place to work and labor or pursue his ordinary calling, is deprived of the power to support himself and his family, and becomes a burden instead of a help to the community. These establishments or places of labor or occupation are respectively adjuncts of a man's homestead, and, within the intent and meaning of the constitution of Florida, form a part of it. Whether the provision is politic or impolitic is a question with which the courts are not concerned. In the eye of the philosophic economist, taking a broad view of the interests and objects of human society, it has many reasons in its favor; and the creditor cannot

complain of injustice, for he understands the conditions when he gives the credit. It is a pure question of policy, namely: Whether the advantages obtained by the exemption are equivalent to the disadvantages arising from the unwillingness of capital to remain in a community where such an exemption exists; or whether from the latter cause, the law will not operate too depressingly upon enterprise. Speculation, however, is unnecessary. The people of the state of Florida have, in their constitution, declared what their will is on the subject, and that declaration is binding on both the people and the courts.

In the case under consideration, the debtor claims to follow the business and trade of sawing lumber, and asks to have his mill, which adjoins his dwelling, reserved as a part of his homestead. In our opinion, this claim is supported by the constitutional provision. The mill, in the sense of that constitution, is appurtenant to and part of the debtor's homestead. If it be objected that the value is unreasonably great, we answer that the constitution prescribes no limit of value and the courts cannot prescribe one. As before stated, we think that a man's shop, store or mill in which he pursues his usual trade or avocation (as well as the farmer's farm) if connected with and adjacent to his dwelling, is intended to be included in his homestead. It is the stand or place on which and by means of which he may continue to pursue his industrial labor and be a useful citizen, and is within the object which the constitution has in view. But the debtor cannot ask to retain those portions of the forty acre tract which are not ancillary to his homestead, considered as the homestead of a lumberman running a sawmill. Those portions will be for the assignee, under the direction of the district court, to separate from the rest. Under the circumstances, we do not think that the debtor has pursued such a course as to throw undue embarrassments in the way of the assignee, which need to be removed by the interference of a court of equity. The main thing which he claims, the sawmill, we think he is entitled to claim, unless there is some foundation for the allegation of the bill that debts to a large amount, which have been proved, were incurred in the erection of improvements on the mill, and for labor. As this, however, will be a matter which the district court can better investigate when marshaling the assets of the bankrupt estate and enforcing any liens which particular creditors may have on particular parcels of property, we do not think there is any call for the interposition of this court.

The motion for injunction is denied and the bill dismissed, without costs and without prejudice to the complainant as to any part of the property except the house and sawmill, and such reasonable extent of land about the same as may be necessary and proper for their enjoyment as a homestead by the debt-

or and his family, and without prejudice as to the effect of debts contracted for improvements and labor. We do not think that any decree should be made authorizing the assignee to sell the reversion of the homestead, as the constitution expressly declares that the exemption shall accrue to the heirs of the party having enjoyed or taken the benefit thereof. This, however, is also a question which the district court can as well decide as this court, and presents no ground for the interference of a court of equity.

Bill dismissed.

NOTE. Upon the subject discussed in the foregoing case, namely, the character of the premises in which a homestead right may subsist, the reader is referred to the following cases, collected by Mr. Thompson, the learned editor of the Central Law Journal, on page 363 of volume 2 of that periodical: Mayho v. Cotton. 69 N. C. 289; Hubbell v. Canady, 58 Ill. 425; In re Tertelling [Case No. 13,842]; West River Bank v. Gale, 42 Vt. 27; Buxton v. Dearborn, 46 N. H. 43; Martin v. Hughes, 67 N. C. 293; Williams v. Hall, 33 Tex. 212; Adams v. Jenkins, 82 Mass. [16 Gray] 146; Kresin v. Mau, 15 Minn. 116 [Gil. 87]; Bunker v. Locke, 15 Wis. 635; Tumlinson v. Swinney, 22 Ark. 400; Ragland v. Rogers, 34 Tex. 617; Sarahass v. Fenlon, 5 Kan. 592; Finley v. Dietrick. 12 Iowa, 516; Taylor v. Boulware, 17 Tex. 74; Bassett v. Messner, 30 Tex. 604; Woodward v. Till, 1 Mich. N. P. 210; Parker v. King, 16 Wis. 223; Campbell v. McManus, 32 Tex. 442; Thornton v. Boyden, 31 Ill. 200; Gregg v. Bostwick, 33 Cal. 220; Kelly v. Baker, 10 Minn. 154 [Gil. 124]; Clark v. Shannon, 1 Nev. 568; Mercier v. Chace, 11 Allen, 194; Goldman v. Clark, 1 Nev. 607; Mills v. Estate of Grant, 36 Vt. 269; Lazell v. Lazell, 8 Allen, 575; Brown v. Keller, 32 Ill. 151; Casselman v. Packard, 16 Wis. 119; Herrick v. Graves, Id. 157; Reinback v. Walter, 27 Ill. 393; Dyson v. Sheley, 11 Mich. 527; Moore v. Whitis, 30 Tex. 440; Walker v. Darst, 31 Tex. 681; Wassell v. Tunnah, 25 Ark. 101; McDonald v. Badger, 23 Cal. 393; Kurz v. Brusch, 13 Iowa, 371; Stanley v. Greenwood. 24 Tex. 224; Phelps v. Rooney, 9 Wis. 70; Pryor v. Stone, 19 Tex. 371; Hancock v. Morgan. 17 Tex. 582; Methery v. Walker. Id. 593; True v. Morrill, 28 Vt. 672; Cook v. McChristian, 4 Cal. 23; Taylor v. Hargous, Id. 268; Walters v. People, 18 Ill. 194; Rhodes v. McCormick. 4 Iowa, 368; Crow v. Whitworth, 20 Ga. 38; Rogers v. Hawkins, Id. 200; Pinkerton v. Turnlin, 22 Ga. 165; Delaney's Estate. 37 Cal. 176; Thorn v. Thorn, 14 Iowa. 49; Hill v. Bacon, 43 Ill. 477; Williams v. Jenkins. 25 Tex. 279; Beecher v. Baldy, 7 Mich. 488; Thomas v. Dodge. 8 Mich. 51; Helfenstein v. Cave, 3 Clarke (Iowa) 287.