## J. P. D. MOURIQUAND v. JAMES H. HART.

PUBLIC GRIST-MILL, *No Part of Homestead.* H., a farmer, owned and occupied a tract of land of 112 acres. Upon this was his house and home. On a small portion, a tract of less than two acres, he built and ran a public grist-mill. The latter was entirely separate and distinct from the farm, and not within any of its fences or inclosures. *Held,* That the running of the mill being an independent business, the mill was not appurtenant to the farm, nor exempt as a part of the homestead.

*Error from Chautauqua District Court.*

INJUNCTION brought by *Hart* against *Mouriquand* and the sheriff of Chautauqua county, to restrain the sale of certain land claimed by *Hart* as his homestead. All necessary facts are stated in the opinion. Trial at the March Term, 1877, of

the district court, and judgment for *Hart* and against *Mouri-quand*, who brings the case here.

*Chas. J. Peckham*, and *R. H. Nichols*, for plaintiff in error.

*Hill & Broadhead*, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: The petition in error and accompanying transcript in this case shows, that at the September term, 1876, of the district court of Chautauqua county, the plaintiff herein (Mouriquand) recovered a judgment for $654 against the defendant Hart, in an action founded upon an alleged tort; that on or about January 10th, 1877, a general execution was issued out of said court to collect said judgment, directed and delivered to the sheriff of said county, who, on the same day, being unable to find goods and chattels of said Hart, and so indorsing on said execution, levied the same upon $1\frac{129}{160}$ acres of land situated in said county, and caused the same to be appraised and advertised for sale, to satisfy said judgment and costs; that said defendant Hart, prior to the first day of the term of court at which said judgment was rendered, and from that time until the said levy, was the owner of said land in fee simple absolute; that said $1\frac{129}{160}$ acres formed a portion of a tract of 112 acres (not within the corporate limits of any town or city), upon which Hart resided with his family during all the period aforesaid — he being the head of a family and entitled to the benefit of the homestead exemption laws of the state; that all of said 112-acre tract of land, except the $1\frac{129}{160}$ acres so levied upon as aforesaid, was farming land, and used by Hart for farming purposes; that the $1\frac{129}{160}$ acres so levied upon were, during all the period aforesaid, exclusively occupied and used as the site of a public grist-mill, such mill and its proper appurtenances being located and in operation thereon; that no farm buildings or other proper farm appurtenances were on said tract so levied upon, nor did Hart with his family actually reside

thereon during said period, but they did reside upon another portion of said 112-acre tract.

After such levy, and prior to the day of sale, Hart filed in the district court aforesaid a petition for an injunction against said Mouriquand and said sheriff, claiming said entire tract of 112 acres, and all improvements thereon, as his homestead, and exempt from sale upon execution; that the proceedings aforesaid were creating a cloud upon his title; and asking that such levy and intended sale, and all attempts to subject said land to the payment of said judgment be perpetually enjoined. A temporary injunction was allowed upon this petition, and the proceedings were stayed. Defendants in said cause, by duly-verified answer, set up the foregoing state of facts, to which plaintiff demurred generally. At the March term, 1877, of the district court, said demurrer was sustained, and judgment rendered thereon, making said injunction perpetual, and against defendants for costs; to which Moriquand, defendant below, and plaintiff in this court, duly excepted. This cause is brought here to reverse said last-named order and judgment of the district court.

We think the petition in error must be sustained. We had occasion in the recent case of *Ashton v. Ingle*, 20 Kas. 670, to examine this question of exemption, in relation to the use put upon and the manner of occupation of premises claimed to be exempt, and any extended discussion of the question will therefore be unnecessary in the present case. Counsel would distinguish this case from that, in the fact that in that case the portion of the premises held not exempt was leased to tenants, and that therefore the owner had no occupation and no right of occupation, having transferred away both, while in this the premises levied upon were in the actual occupation of the owner. Instead of leasing the mill to others, he was running it himself. He therefore, in the language of the constitution, both owned and occupied. There is of course a difference between the cases, as there is a difference in the use to which the disputed premises were put; but this difference is not such as to remove this case out of the rule

laid down in that. It was then conceded that there might be a constructive occupancy, and it had previously been held, in *Hixon v. George,* 18 Kas. 258, that the mere fact that premises are leased does not necessarily destroy the homestead exemption; but the idea, as expressed, was that the use was such as to disconnect that portion of the premises from the homestead. As said in the opinion: "In order that anything shall be a part of the homestead, it must not only be connected therewith as one piece of land is connected with another to which it adjoins, but it must also be used in connection therewith, as a part thereof. In legal phrase, it must be appurtenant thereto." So in the case at bar, the mill was not used in connection with and as a part of the homestead. If it had stood a mile away from the defendant's farm and been used exactly as it was used, no one would for a moment think of calling it a part of the homestead. The fact that it is adjacent, and that the ground covered by it, together with the farm, does not exceed 160 acres, does not change the character of the use. "Homestead" and "residence" are the words of primary significance in that section of the constitution granting and defining the exemption. Area is subordinate, and a mere limitation. The exemption is not of so much ground upon which is a homestead, but a homestead to such an extent. It may be that a man may reside with his family in his store-building, or his brewery, or mill, and then hold the entire building exempt as his homestead; but this is no such case, and it will be time enough to pass upon such a question when it arises. Here, the defendant had his residence in a separate and independent building away from his mill, and that was his homestead. With it passed, as appurtenant thereto, his farm, but not his mill. The claim in the petition was, that the mill was exempt as a part of the farm, but this clearly cannot be. It was a public grist-mill. The running of it was an independent business, and not a part of the operation and management of the farm. Whether he could, if he had no farm, claim his mill as exempt, need not be decided. It would

seem from the leading case cited in counsel's brief, and in the opinion in *Ashton v. Ingle*, and in that of *Greeley v. Scott*, 2 Woods, 657, that such would be the decision under the Florida constitution; but there is this difference between the language of the two constitutions: that of Florida (art 9, §1) reads, "a homestead to the extent of 160 acres of land," etc.; ours, "a homestead to the extent of 160 acres of *farming* land," etc. Whether the word "farming" is to be considered a limitation to the actual use, so that only that portion of the adjacent 160 acres which is actually used for farming purposes shall be exempt, or as simply descriptive of land outside the limits of a town or city, or as meaning land which is susceptible of cultivation and may be used for farming purposes, and has not already been put to other uses, is a question whose determination may become important in some cases, and would help in the solution of the inquiry just presented. We shall not stop to consider it now. All we now decide is, that the farmer may not hold as exempt his mill in addition to his farm.

The judgment of the district court will be reversed, and the case remanded with instructions to overrule the demurrer.

All the Justices concurring.