I. S. DeFord and Allie C. DeFord v. W. W. Painter, *Sheriff of Logan County.*

1. Homestead—*What Constitutes—Exempt From Execution.* DeF., one of the plaintiffs in error, owned a lot with a building thereon, in the business part of the city of Guthrie, and rented the basement and first floor for the sum of thirteen hundred dollars, and a part of the second floor for offices for the additional sum of two hundred and fifty dollars. He resided with his family on a portion of the second floor, valued at the sum of two hundred and fifty pollars per annum. The family had no other home. *Held,* That the building was the dwelling of DeF., and the home of his family, within the meaning of § 2, chapter 34, Oklahoma Statutes, 1893, and was the homestead of plaintiff in error, and, as such, exempt from execution.

2. Same—*Statute—Construction* Under this section of the statute, providing for the exemption of land as a homestead in a city, which

has been improved by a building used by the family as a home, the homestead is not lost or forfeited by the circumstances that the style of the building resembles, in its architecture, ordinary business structures, and that it is on one of the principal business streets, flush with the sidewalk; that the larger portion of the house is rented for the purpose of business and revenue, and the smaller part used for a home, and that the family resides on the second floor, and not upon the first floor of the building. If the building is in fact the only home of the family, it is exempt from execution, although its principal use may be for business purposes.

3. WITNESS —*Interrogation by Court Not Error, When.* The interrogation of witnesses by the judge, during the progress of the case, is not error, and he may, in the exercise of his discretion, aid in eliciting material matter, suggested by the evidence.

*Error From the District Court of Logan County.*

*Green & Strang,* for plaintiffs in error.
*Wisby & Hornor,* for defendant in error.

The opinion of the court was delivered by

McATEE, J.: This is a proceeding in injunction to restrain the sheriff of Logan county from selling under execution the following described property, to-wit: Lot numbered 13, in block 56, in Guthrie proper, in Logan county, for the reason that the property was, and is exempt from execution as the homestead of the plaintiffs in error. In the year 1890, Irwin S. DeFord, one of the plaintiffs in error, erected the building situated on the lot herein described, being a lot thirty-two feet by eighty feet, in the central part of the business portion of Guthrie, to be used, upon his own statement, as "a building to live in, and a part of it to rent for an income for a living," for his family, which consisted of his wife and three children. The basement and first floor were arranged for business purposes. The rooms on the second floor were arranged to be used as business offices, and a portion thereof for the use of himself and family as a "building to live in." There appears to have been no yard, or appurtenances

of any kind. The three front rooms on the second floor were expressly arranged for office rooms, and seven remaining rooms on the second floor appear to have been arranged in such a manner, (a part of them with folding doors) that they could have been rented for offices, or used as a residence.

About the 1st of March, 1891, the plaintiffs in error moved into the building and occupied the rooms on the second floor (either four or six, the number does not definitely appear,) and were so residing at the time this action was commenced in the court below. Their residence, as stated, has been continuous from the time the building was completed and occupied. The building is a business building in architecture, construction and appearance, and cost eight thousand dollars. The basement has been rented at various times as a justice's court room, saloon and restaurant. The present rental value thereof is estimated at three hundred dollars per annum. The first floor is occupied as a post-office for the city of Guthrie, and its rental value is one thousand dollars per annum. The rental value of the second floor is estimated at five hundred dollars. The value of the portion occupied by plaintiffs in error is estimated by Irwin DeFord, at two hundred and fifty dollars, which he afterwards stated he thought was too high an estimate.

Upon the trial below, the presiding judge interrogated one or more witnesses freely, and at length, upon matter upon which he had not been examined in chief, over the objection of the plaintiffs in error.

Upon the findings made on the hearing in the trial court, the court concluded that the building in question was not exempt from execution as a homestead, and that the temporary order of injunction theretofore issued in this case should be dissolved, and that the building should be subject to the execution in the

hands of the defendant in error, and for costs of the action taxed to the plaintiffs. To all of which findings of fact and conclusions of law the plaintiff excepted. The plaintiffs at the same time filled their motion for a new trial, which was overruled, to which they excepted,

Upon the evidence and findings of the trial court, the questions to be determined in the case upon the facts, are, (1) whether the leasing of so large a part of the building which is claimed by plaintiffs in error as a home, for the purpose of obtaining revenue therefrom, for the maintenance of the owner and occupant and his family, destroys the homestead character of the property and the right of plaintiffs in error to claim the same as exempt from execution by reason of the claim thereof as a home by them; and (2) whether the interrogation of the witnesses by the judge in the court below is error, and if it is error, whether it is of such a character as to entitle the plaintiffs in error to have the case reversed.

Upon the first proposition it is correctly observed in the brief of the defendant in error, that upon the general subject of the homestead laws, the views of court may be "arranged into three classes, namely, those which hold that if any portion of the property be occupied for homestead purposes, the whole is exempt; those which hold that the portion occupied is exempt, and the remainder not; and those which hold that the test of exemption is the principal use to which the property is devoted."

The view has been held by the supreme court of Iowa, "that the portion occupied is exempt, and the remainder not." This, however, has not been adopted, so far as we know, by any other court, and no argument has been presented for its adoption here.

The defendant urges for acceptance the view which makes the principal use of the property the test of

its exemption as a home, or of its liability to execution; that is, if the major interest in the property claimed as exempt, be dedicated to use as a home, the property is exempt; but if the major use of the property claimed as exempt be dedicated to business purposes, then the property is not exempt from execution. In support of that view the principal cases from the courts of the western states upon the subject of urban homestead, have been carefully reviewed; and it is thereupon concluded by the defendant in error that the doctrine of principal use is that which pervades the later cases.

While the limit of area is that which is prescribed for the homestead in this territory, that of value is the limitation selected and provided for by the statutes of a number of the states. The laws of the various states differ in other respects and little satisfaction, certainty or advantage can be derived from an examination of the decisions coming from states of which we have not the statutes before us, or having them before us, find them to be dissimilar to our own. No decision has, however, been hitherto made upon this subject in this territory, and it is important that the principal cases cited in the argument should be examined.

In the leading Wisconsin case of *Phelps v. Rooney*, 9 Wis. 70, cited and commented upon by both plaintiffs and defendant in error, the question was whether the south one third of lot four, in block five, in the city of Milwaukee, with the building and appurtenances thereon situated, constituted a homestead under the provisions of the Wisconsin statutes. The Wisconsin statute provides, that:

"Sec. 51. A homestead consisting of any quantity of land not exceeding forty acres used for agricultural purposes, and a dwelling house thereon and its appurtenances, to be selected by the owner thereof, and not included in any town plat, or city, or village; or

instead thereof, at the option of the owner, a quantity of land not exceeding in amount one quarter of an acre, being within the recorded town plat, or city or village, and a dwelling house thereon, and its appurtenances, owned and occupied by any resident of the state, shall not be subject to forced sale or execution, or any other final process from a court, for any debt or liability contracted after the first day of January, in the year one thousand eight hundred and forty-nine."

The style of the building was a store situated in a block on one of the principal businesss streets in the city of Milwaukee. The basement and first floor were leased by Rooney and occupied by tenants under him, and produced in rents fifteen hundred dollars a year. The rooms above were used by Rooney, the defendant in error, as a dwelling, and were worth two hundred and fifty or three hundred dollars a year.

Upon this state of facts, the court said :

"We have a statute which exempts as a homestead * * * a quantity of land not exceeding in amount one-fourth of an acre, in a city or village, with a dwelling house thereon and its appurtenances, and which exempt property we all know may be, and frequently is, worth ten, twenty or forty thousand dollars. And the whole policy of the legislation of the state has been to extend rather than to restrict the privileges of the exemption laws.

"The courts, whatever they may think of the general policy of this legislation, and whatever hardships may arise in particular cases in consequence of it, can only construe and interpret the statute as they find it. When a law is in its face sufficiently intelligible, and when a case clearly falls within the operation of its provisions, I feel it my duty rigidly to enforce it whatever may be my notion of its policy or equity, so in the present case, while it may be a hardship that the respondent should enjoy, free from all compulsory powers of the court to subject it to the payment of his just debts, the property ( the homestead as I think it is,) a portion of which he can rent

for twelve or fifteen hundred dollars a year, I think the statute exempts it, and we must so declare."

And after stating that Rooney occupied the premises as a dwelling house, and that it was his "home," the court says, that,

"We therefore cannot see why, to all intents and purposes, it is not his homestead within the meaning of our statute."

It continues as follows:

"The circumstance that the dwelling was situated on one of the principal business streets, or the fact that its external appearance or internal arrangement was like a wholesale or retail store, or because it would be vastly more valuable as a place of business than as a residence, could not affect the question. The case rests upon the fact as to whether the building was really and truely occupied as a dwelling house for himself and family; if so, they are secure in the enjoyment and use of it as such. This, we think, constitutes a homestead under the statute."

The court further says that,

"After what has already been said as to the signification of the word 'homestead' as used in our statute, and the expression of our opinion that it intended to limit the amount of land in a city upon which is situated a dwelling house, or habitation or abode of the owner and his family, it is only necessary further to remark that this court cannot restrain the operation of the statute within narrower limits than its words import."

And the conclusion of the court upon a review of the whole matter was that,

"I cannot believe, in view of the legislation upon this subject, that the legislature intended that a person should lose or forfeit the benefit of the homestead exemption by omitting to use a portion of his dwelling house, or residence of his family, or by devoting such portion to some other use."

But it is claimed by the defendant in error that this case, thus clearly and definitely interpreting a statute

like our own, was completely overruled in the later case of *Castleman v. Packard*, 16 Wis. 114. In that case the property claimed as exempt was situated in the village of Sparta, the land not exceeding in quantity a quarter of an acre. There were situated upon it, besides the dwelling house in which the claimant resided with his family, various other buildings which were used and occupied for stores, ware rooms, shops, school rooms, offices, etc. The claimant occupied the only dwelling house thereon and its appurtenances. He rented the other buildings upon the one-fourth of an acre for stores, ware rooms, shops, school rooms, offices. He yet claimed them also as his homestead, in addition to the dwelling house wherein his family resided, and which he occupied as a home. The circuit court did not sustain his claim as to the various other buildings, which were rented. That court, in passing upon this state of facts, says that

"I cannot believe the legislature ever intended that a person should hold all the buildings which might be erected on a quarter of an acre of ground, in a city or village, whatever might be their character, or for whatever purpose they were designed, under the homestead exemption law, merely because he might live in one of them. Such a construction seems to us most unreasonable. The statute exempts a given quantity of land, with a dwelling house thereon and its appurtenances. Of course, the exemption of that quantity of land has regard to the purposes for which it is used. It was supposed that this amount of land might be convenient and necessary for the comfort and enjoyment of the dwelling house. Nor are we prepared to say that the entire quantity of land must be devoted exclusively to the use of the dwelling. In addition to the dwelling, a person might erect a small shop or building of that character on the lot, which he, himself, might use and occupy for the purpose of his trade or business, without forfeiting the exemption. But it is not necessary to express any opinion upon that point in this case. For the testimony shows that there were various buildings on the lot, which he rented for

offices, stores, schools, etc.; and it is very clear that these were not exempt."

The opinion was rendered in this case by the same judge who prepared the opinion in the *Phelps-Rooney* case, three years earlier. No reference was made to the *Phelps-Rooney* case, and it was not, therefore, modified, or overruled in any sense, to any degree. Indeed, there was no occasion for it. The state of facts was wholly different. The *Phelps-Rooney* case is precisely like the one in hand in this court. It determined that, upon the provision of a statute like our own, the homestead right may exist in a building occupied as a home by the family of the claimant, notwithstanding the fact that the building was erected upon one of the principal business streets of a large city, and that the basement and first stories were rented out for business purposes and produced a large revenue to the homestead claimant, amounting to fifteen hundred dollars per annum, and that the upper rooms, occupied as a home by himself and family, were of very subordinate value.

The case of *Castleman v. Packard* simply decides for the state of Wisconsin that a homestead claimant may not claim as exempt the house in which his dwelling is upon a quarter of an acre of land claimed as exempt, within the business limits of a city, and also devote the rest of the quarter of an acre of land to stores, ware rooms, shops, school rooms, offices and other purposes alien to the homestead character, and claim them also as exempt. This case does not support the contention of the defendant in error, that if the principal use of a single house in which the claimant resides within the city limits be devoted to business purposes, that it will exclude the exemption of the whole house under the statute for homestead purposes.

The cases of *Blumm v. Rodgers*, 15 S. W. Rep. 115, and

*Blackburn v. Knight,* 16 S. W. Rep. 1075, are cases decided by the supreme court of Texas, and are interpretations of a statute which is not before us, and the provisions of which are not cited in the briefs of counsel, nor in the opinions of the court. They can therefore render but little service in determining the question. In the former case, "the owner of a two acre block, had on the east half his residence and all appurtenances except the cow lot, which was on the west half. The rest of this half he cut into three lots, on each of which he built a dwelling for rent. Each lot was separatetely fenced, and a private alley was run between the east and west halves of the block. He reserved the ground around the houses, and the right to take water from the premises, which he sometimes exercised although there was an abundant cistern near his residence. He also occasionally used the ground around the houses for garden and other purposes."

Upon this state of facts it was held that the three lots, separated by the alley, separately improved, each separate from the other by a division fence, and all separate from the homestead by the alley, "were practically divided from the homestead, and were not exempt from execution."

In the latter case of *Blackbvrn v. Knight,* it was shown,

"That the defendant had long since built on the lot which they now claim as their urban homestead, and had ever since rented the premises to tenants, and only used a strip on the lot about fourteen feet wide for the purpose of hauling wood, etc., to their residence on an adjoining lot. The claim of homestead in that case was sustained as to the strip only."

No rule can be drawn from the state of facts in either of these cases by which the proposition can be sustained that the test of exemption in the occupancy

of a single building, is the principal use to which the property is devoted. No such doctrine was in fact sought to be established, or announced, or was in question in either of these cases.

In the case of *In re Estate of Noah, Deceased*, Cal. 15 Pac. Rep. 291, cited by the defendant in error in support of his position, it was held:

"Noah died making no provision in his will for his widow, leaving no community property, and a four story brick business block valued at $25,000, is the only separate real property. This could not be divided without material loss. No homestead was set apart during the husband's life time. The widow applied to the court to set one apart. Under the Code of Civil Proc. Cal. § 1465, provides, that the court shall set apart a homestead, none having been selected during the lifetime of the deceased, out of his real estate. The section referred to provides that, 'if no homestead (as was the case here) has been selected, designated and recorded during the life time of the deceased, the court must select, designate and set apart, and cause to be recorded a homestead for the use of the surviving husband or wife, and the minor children, * * * out of the common property, or if there be no common property, then out of the real estate belonging to the deceased.'"

The homestead selection was sought for by the widow. It was held that as the property in question was of such a nature that it could not have been selected as a homestead during the life time of the deceased, the petition was properly denied. In the absence of the California statute which makes provision for the family while both husband and wife are living, it is impossible to form any conclusion; or to attach to the opinion the weight which is sought to be given to it by the defendant in error.

In *Ackley v. Chamberlain*, 16 Cal., 181, a building originally intended as a family dwelling and storehouse, but changed during its erection so as to adapt

it to hotel purposes, but also occupied in part by the family as a home, was held exempt from forced sale.

A like construction was placed upon a similar statute in Nevada, in the case of *Goldman v. Clark*, 1 Nev. 607, in which the supreme court of that state held that a home in an incorporated town, constructed so as to be more suitable for a boarding and lodging house than for a residence merely, and much the larger portion of which was usually rented to lodgers, was exempt as a homestead. The doctrine of principal use was plainly excluded.

In the case of *Garrett et al. v. Jones*, Ala. 10 S. W. Rep., 702, the house was built in a business part of the town, and used principally as a store, although the owner, (an unmarried man) slept in a small back room, and took his meals elsewhere. It was construed not a homestead. Upon that state of facts, the supreme court of Alabama said that it "may be laid down as a safe and conservative rule on that subject that where the trade adaptation and use of a building is incidental or secondary only to its habitation, where the chief use of the structure is that of a home for the owner, and some part only, not essential to this end, is fitted up and used as a shop, an office or salesroom, it is a homestead. But when this state of facts is reversed and the residence feature is only auxilary to the business use, where only a relatively small part of the building is devoted to the use of the habitat, the chief adaptation and use are those of business, the building is not a homestead, even though the occupant have no other home, and uses this for all the purposes of living."

In the cases above cited from Texas and California, the statutes upon which these interpretations are made, is absent; and if the statute of Alabama providing for the exemption of homesteads is similar to our own, we understand this ruling to support the

contention of defendant in error. The same remark may be made upon the case of *In re Estate of Noah*, 15 Pac. 291.

Cases not showing a similar state of facts, nor presenting the question here proposed, and coming from states of which the statutes have not been presented to us, or are unlike our own, do not materially aid us in the solution of the case, nor can we safely follow general propositions cited from such cases.

The question arises solely upon a right provided for by the statutes of this territory. We must look first to the statute itself, and since no decisions have been made upon the statute in this court hitherto, we must in the next place look to the courts of states in which the statutory provisions are most like our own, and if possible, to the courts of those states whose situation is similar to our own, and from which our people have for the most part come. It is not too remote to observe that while the legislature of this territory adopted this statute, the people who created the legislature, and from which the legislature came, a large majority of them were formerly residents of the state of Kansas, and more remotely of other northern and western states, and that the legislative representatives of this territory must have passed the statute with the interpretation placed upon similar statutes, in the states where the population of Oklahoma, for the most part, originated.

The statutes which we must interpret are found in ch. 34, title "Exemptions," §§ 2844 and 2845, p. 580, of the Statutes of Oklahoma, 1893, and are as follows:

"(2844) SEC. 1. The following property shall be reserved to the head of every family residing in the territory exempt from attachment or execution and every other species of forced sale for the payments of debts, except as hereinafter provided:   *   *   *

"(2845) SEC. 2. The homestead of a family not in

a town or city shall consist of not more than one hundred and sixty acres of land, which shall be in one tract or parcel with the improvements thereon. The homestead in a city, town or village, consisting of a lot or lots, not to exceed one acre with the improvements thereon; *Provided*, That the same shall be used for the purpose of a home for the family; *Provided*, also, That any temporary renting of the homestead shall not change the character of the same when no other homestead has been acquired." * * *

The conditions which entitle the debtor to claim the protection here provided for, in a city, town or village, are first, that he shall have a family; second, that the lot or lots in any town, city or village shall not exceed, in amount, one acre, with the improvements thereon; third, that the said lot or lots shall not exceed one acre, shall be used for the purpose of a home for the family. The privilege is enlarged by the further provision that any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired. The statute is without other limitations. It does not prescribe the style of the building which the homestead claimant shall erect, nor does it prescribe that the building should not resemble, in architecture, ordinary business structures. No limitation is placed upon his choice. It does not provide that the building in which the home is made shall not be placed upon one of the principal business streets. It does not provide that the house should not be flush with the sidewalk, or compact with other houses, or that the family should not take boarders in the house, or that the owner should not rent any particular portion of it for the purpose of deriving a revenue therefrom. It is in no part of the statute provided that a part of the dwelling shall not be used for any other purpose than a home, or that the major part of the building shall be used for a residence, and a minor part for business, if

so used at all.   Nor does it provide that the family shall live in the basement, or on the first floor, the second floor or upon the third floor.   The sole limitation upon the general subject, including all these enumerated particulars, is, that "the same (the homestead) shall be used for the purpose of a home for the family, and that the space which the homestead shall occupy shall not exceed one acre with the improvements thereon."

The same section of the Statute which provides for the exemption from forced sale of a homesterd "in a city, town or village, consisting of a lot or lots not to exceed one acre, with improvements thereon, provides also that the 'homestead of a family not in a town or city shall consist of not more than one hundred and sixty acres of land   *   *   *   with the improvements thereon.'"

The provision of one hundred and sixty acres of land in the latter clause is a provision intended only as a bare homestead, but of a homestead accompanied by a method of income and a means of support for the family.   Could it be contended that, if the income from the land of the rural homestead be greater in value than the rental value of the house in which the homestead claimant resides, that then the doctrine of principal use should govern, and the whole homestead be forfeited as a homestead and become subject to execution?   In support of such a theory it is argued that the rural homestead is often of great value, and that the revenue from it exceeds the needs of the family, and that the result is thus a fraud upon creditors.   And yet, the doctrine of principal use has never, to our knowledge, been applied to the rural homestead.   The provisions for rural homestead are provided for in like terms by the statute.   The principles which govern the interpretation of one must be applied to the other.

No substantial reason can be given for the applica-
tion of the doctrine of principal use to the urban
homesteads, which does not apply with equal force to
the rural homestead, and to make the application of
that doctrine to the rural homestead, would be to
destroy the homestead privilege as it is provided for
by the statute, and to leave to the judgment of the
court in each instance whether the value of the reve-
nue from the homestead was not greater than the value
of the mere residence upon it, and if found to be so,
that the homestead would then cease to be exempt,
and to submit the security of the homestead not to the
express and exact provisions of the statute, but to the
judgment of the court.

In the language of the court in *Stevens v. Hollings-
worth*, 74 Ill., 208, it would be difficult to explain "why
the garden, stables, yards, orchard, etc.," upon the
rural homestead "shall be exempt, and the shop, mill
or business house, although indispensably necessary
to earn a support for the family, and located on the
same lot of ground with the residence, shall not be
exempt."

We are aware that in the case of *Greeley v. Scott*, 2
Woods, 657, Mr. Justice Bradley, in construing a con-
stitutional provision of the state of Florida, upon the
subject of "Homestead" stated that—

"If the rural homestead should become the scene of
a diversity of industries, and the farmer owning one
hundred and sixty acres should undertake to establish
thereon a saw mill, a grist mill and a carding and
fulling mill, that he could not claim all of these sepa-
rate businesses as pertaining to, and a part of, his
homestead and exempt from execution."

The facts cited in the opinion of Judge Bradley
would be an appropriate citation against a construc-
tion of our statute which would undertake to say that
a diversity of industries might be established upon

the various portions of an acre in a town or city under color of the homestead privilege, and might be claimed as exempt from forced sale for the payment of debts. Such a construction we are not making. The construction here made is that which we hold the law to be of this territory as applied to the facts as they are presented in this case.

The statute may be invidious to the rights of creditors. It may be made the cover of great injustice. A large fortune derived from the wealth and resources of creditors may be invested under its protection and be exempt. Such methods, if such should be the result, might reflect very injuriously upon the credit of the territory. But if these reflections are just, they are matters to be presented to the legislature for the purpose of urging a modification of the law.

These reflections, however, do not aid us in determining what the statute means. The judicial function is to determine and declare what the law is, as it now stands. It is the privilege of the court, as well as its duty, to refrain from undertaking to alter, or to give any other than that plain meaning to the law which another branch of the government has enacted and declared. The government is more secure, and the people surer of their legislative rights, when each branch of the government keeps within its own proper province.

The law seems plain, and if the people of this territory wish it otherwise, it is in their power to make that wish manifest. The legislative body meets in this territory every two years, with full authority to legislate upon this subject, to alter, amend or entirely revoke this statute.

While this particular case may appear to bear upon the interests of the creditor, we cannot make the law, but must declare it just as we believe it to be.

The statute of the state of Wisconsin providing for

the exemption of an urban homestead is set forth above in terms so similar to those of our own as to defy distinction, except as to the amount of land which may be claimed as exempt. We approve the views of the supreme court of that state as expressed in *Phelps v. Rooney*, cited above, interpreting and construing that statute.

The statute of the state of Minnesota providing for the exemption of a homestead, exempts within a city, town or village "as a homestead, a quantity of land not exceeding one lot." In the case of *Jacoby v. Parkland et al.* 43 N. W. Rep. 52, the following facts were, under this statute, submitted to the court for a ruling:

This was an action by Fannie Jacoby to determine the adverse claims of the Parkland Distilling company and others to a tract of land sixty-six by one hundred and sixty-five feet, that being one lot as originally platted in the city of Minneapolis, on which was erected a three-story brick building, finished for stores below, and with rooms for a residence above. The defendants in error claimed the building under a lien by reason of certain judgments recovered by them against George G. Jacoby, the husband of the plaintiff in error. It was admitted upon the trial that the debts for which the judgments of the defendants in error were recovered were incurred, as stated, and would be a lien upon the property if it was not exempt under the homestead act. The rooms in the second story were occupied as a residence by the plaintiff in error, and claimed by them as their homestead. Upon this state of facts it was said by the court that "the fact that the building on the lot in question was in part suited to and used for business purposes, was wholly immaterial. No restriction is placed upon the uses of any part of the building, provided it is the dwelling of the debtor. This has been the settled construction of the statute for many years. (*Kelly v.*

*Baker*, 10 Minn. 154; *Omland v. Holcomb*, 23 N. W. Rep. 341.) Neither can the question of the value of the premises, or what proportion that value bears to the remaining property of the debtor be at all important, so long as the premises are, in area, within the limit of the exemption fixed by law. Unfortunately, our statute fixes no limit as the value upon the homestead exemption. It must be confessed that such a law may be greatly abused, and permit great moral fraud; but that it is a question for the legislature, and not for the courts."

In the case of *Kelly v. Baker*, here cited and relied upon.

"'The premises in question consisted of a quantity of land in a town, upon which was a brick building two stories high, with a basement. The front part was built, rented, and used for a store, and was adapted to such use; the second story of the front part was used as ʲa printing and job office, by a company of which the owner was a member, and also by the owner (who was a physician) as his office. The basement, under the front of the building, was also rented, a part of it in connection with the store and the other part for pork packing, in which the owner also had some articles stored. The rear part of the building was fitted up and used by the plaintiff as his dwelling house, having one entrance through the hall in the rear of his store, and connected with it by a door, and one from the rear of the building. The building was situated on a corner, having an alley in the rear. It was held that the entire building was exempt as the homestead of the owner. 'It is to be observed,' said Mr. Justice Berry, 'that no limitations were imposed by the legislature upon the use which should be made of the homestead of eighty acres, or of one lot, provided, only, it was the dwelling place of the party claiming the exemption. As to the balance, beyond what was required for the site of the house, the claimant seems to have been left free to allow it to remain uninclosed, unimproved, vacant, and idle, or to devote it to any use he might choose.'"

The statute of the state of Michigan exempts "a quantity of land not exceeding in amount one lot in any town, city or village, and a dwelling house thereon, and its appurtenances, owned and occupied by any resident of this state." The provision of the statute is in substance the same as that which we are now interpreting. The supreme court of that state in *King v. Welburn*, 47 N. W. Rep., 106, November 14th, 1890, interpreted this statute. The defendants, Welburn *et al.* occupied lots one and two. in block forty-eight, and lot twenty-one, in block forty-nine and one-half, in the village of Three Rivers. Upon lots one and two was a three story building used as a hotel, and a two story wooden building in the rear used as a dwelling house, and a barn upon lot twenty-one used in connection with the hotel. They lived in the hotel; had no other residence or home, or land or property out of which to construct a homestead. The homestead was disregarded by the officers bearing the execution. The court said:

"It is insisted that this building was occupied by the petitioner and his family for the sole purpose of conducting a hotel, and that therefore no homestead right attached. We cannot agree with this contention. The adoption of this doctrine would be in plain defiance of the statute, and render .it nugatory to those engaged in the business of hotel keeping. The benefits of the statute are to be secured to all owners of land which they occupy with their families, and who have no other home. There is no intent apparent anywhere to exclude the families of hotel keepers from the benefits of the act."

A constitutional provision of the state of Kansas, art. 15, § 9, provides, "that a homestead, to the extent of  *  *  *  one acre, within the limits of an incorporated town or city, occupied as a residence by the family of the owner, together with all improvements on the same, shall be exempt from forced sale,"

etc.   It is claimed by the defendants in error that the Kansas cases are decided upon the doctrine that the homestead was not exempt as a homestead, if the building in which it is claimed is principally used for business, or other purpose than the home of the family. An examination of the Kansas cases does not give us that impression.

In the case of *Hogan v. Manners*, 23 Kan. 552, Brewer, J., in delivering the opinion of the court, says that "the fact that a party may have his store, or shop, or office in a part of the residence, will not, of itself, destroy its homestead character.   We are not called upon to decide whether the occupation by the family of the owner of a single room in a large building used chiefly for stores and offices, will give to the entire building a homestead character.   All we do decide is, that, where a building whose size and number of rooms is not shown, is occupied as a residence by the family of the owner, its homestead character is not destroyed by proof that a single room or two is used by the owner for business purposes."

In the case of *Rush v. Gordon*, 38 Kan, 535, the first, or lower, story and cellar were used by the wife for the purpose of carrying on a retail grocery and provision business. . The entire real estate was used by the husband and wife, in connection with their residence and the grocery and provision business.   It was said by the court, "there is nothing to prevent it from being a homestead within the meaning of the homestead exemption laws, except that the wife keeps a grocery and provision store in the first, or lower, story, and makes use of the cellar and some other parts of the premises in connection therewith."   The property was held exempt.

In *Bebb v. Crowe*, 39 Kan. 342, part of the lower story and basement were leased for business purposes

by tenants, and a room attached to the main building was during a part of the time leased and during a part of the time occupied by plaintiffs as a butcher shop, and the question thereupon arose as to whether the occupancy of a part of the building would destroy the homestead right of the plaintiffs in that part of the building so used. The court said: "Why should not the owner do as he wishes with his own building, when it is in reality his own residence, the abode, the dwelling house, the home of his family? Of course if it should practically become a business house rather than a home, it would then cease to be exempt. The owner had the privilege of using any part of the building for his family; the basement, the first floor or second floor; the exemptions do not depend upon so frail a thread as which part of a dwelling a family must use, nor does the architecture of the building, or the question whether it would be more convenient as a store than a dwelling house, decide its character; the test is whether the building was used as a residence, not nominally but actually." We believe it was in fact the residence of the plaintiffs. It certainly was the only home they had, and we believe it came within the provisions that exempt it from forced sale. * * * A homestead is limited in its extent in this state, and must be occupied as a residence of the family; but there is no limitation on its value." The doctrine of principal use contended for by defendant in error, so far from being confirmed in these cases, seems to us to be emphatically refuted. That this conclusion is correct, is confirmed by the fact that the authorities cited by the court in the latter case as authority for the law there announced, are the cases of *Phelps v. Rooney*, 9 Wis. 70, and the Minnesota cases of *Umband v. Holcomb*, 26 Minn. 288; *Kelly v. Baker*, 10 Minn. 154; *Gainus v. Cannon*, 42 Ark. 503, which expressly announce the doctrine that if any portion of the property

be occupied for homestead purposes, the whole is exempt, and which excludes the doctrine of principal use.

In the case of *Hoffman v. Hill*, 47 Kan. 611, the question was whether lot five in block numbered sixteen, in the city of Bunker Hill, Russell county, was exempt as a homestead. The house upon the premises was occupied as a residence by the family of Hill, and the building in which they lived was also used as a hotel and boarding house. Upon this state of facts it was declared by the court that "it follows from the decisions made by this and other courts of last resort that it makes no difference that the homestead or a part thereof may be used for some other purpose than as a homestead, where the whole of it constitutes only one tract of land not exceeding in area the amount permitted to be exempted under the homestead exemption laws, and where the part claimed as not a part of the homestead has not been totally abandoned as a part thereof by making it, for instance, another person's homestead or a part thereof, or by using it or permitting it to be used in some other manner inconsistent with the homestead interests of the husband and wife." And the authorities relied upon include, along with other Kansas authorities, the case of *Bebb v. Crowe*, last cited, in which the Wisconsin, Minnesota and Arkansas authorities are relied upon.

In the case of *Layson v. Grange*, 48 Kan. 440, the supreme court cites with approval the case of *Stevens v. Hollingsworth*, 74 Ill. 202, to-wit:

"The intention of the legislature in enacting the homestead exemption law was not to save a mere shelter for the debtor and his family, but it was to give him full enjoyment of the whole lot of ground exempted, to be used in what ever way he might think best for the occupancy and support of his family, whether in the way of cultivating it, or by the erection of buildings upon it, either for carrying on his own business or for deriving income in the way of rent."

And then the court proceeds to say that it had recently held that "it makes no difference if a part of the homestead has been used for other purposes not inconsistent with the owner's homestead interests, where the part claimed as not being a part of the homestead has not been totally abandoned by the debtor."

These announcements upon the subject of the extent and the absolute nature of the homestead right are fortified by reference, not only to all the Kansas cases herein referred to, but also to the law as it existed in Illinois, and as it was announced in the case of *in re Tertelling*, 2d Dillon, 339.

The adoption in this case of the law as it has been declared in the state of Illinois, leaves to the homestead claimant not only a mere shelter for himself and family, but gives to him the full enjoyment of the whole lot of ground exempt, to be used in whatever way he might think best for the occupancy and support of his family, by carrying on his own business, or for deriving income in the way of rent. It also expresses the same doctrine in another form when it says that the homestead claimant has not totally abandoned that part of the homestead sought to be subjected to the payment of his debts. These expressions of the law leave, in our judgment, no room for the doctrine that a building in a city, town or village in this territory occupied as a homestead will not be exempt from seizure under execution, if the principal use thereof be dedicated to business, or used for the purpose of deriving income by renting any portion of the property whatever, provided that some portion of such building be still used as a homestead by the debtor.

We have dwelt upon the Kansas cases because the provisions of the statute of that state hereinbefore cited, more nearly resemble the homestead exemption

act of this territory than any other homestead act which we have found in this investigation.

They are stated in their historical order, and it thus appears that while Judge Brewer desisted from passing upon the question now under consideration, which was not in the case of *Hogan v. Manners*, then before him, that yet, when the question afterward came up, the supreme court of that state in *Bebb v. Crowe*, did meet the question and pass upon it, as it has been herein set out.

The same interpretation has been placed by Judge Dillon, while presiding as a circuit judge of the United States for the Eighth circuit. (2 Dillon Circuit Court Reports, 339.) In that case the house occupied by the bankrupt debtor was held to be exempt, although a portion of it was used, for a brewery. The court there declares that, "The constitutional provision respecting the homestead exemption is exceedingly liberal to the debtor; but it may admit of some doubt whether it is just toward the creditor. The quantity of land exempted is limited, but there is no limitation on the value of the land exempted, or the value of the (homestead) improvements thereon. If the building is occupied as a residence by the family of the owner it is exempt, whatever its value. * * * We not only hold that the whole house occupied as a home is exempt, though a portion of it may be used, and may have been constructed with a view to be used for other purposes."

It was assigned as error that the presiding judge interrogated witnesses during the trial of the cause, and that such interrogation was error. We understand the law to be that it is the duty of the judge, in the exercise of sound discretion, to elicit the evidence upon relevant and material points involved in the case. The record does not show that any error was committed by the judge in the interrogation as par-

ticipated in by him. (*Ferguson v. Hirsch*, 54 Ind. 337; *Blizzard v. Applegate*, 77 Ind. 516; *Lefever v. Johnson*, 79 Ind. 554; *Huffman v. Cauble*, 86 Ind. 591; *Sparks v. State*, 59 Ala. 82.)

The whole building is exempt from force sale, and the order of the district court is reversed, and the injunction herein will be made permanent.

By the Court: It is so ordered.

Dale, C. J., not sitting; Bierer, J., and Scott, J., concurring; Burford, J., dissenting.