Bessie Cohen v. Commissioner.
Cohen v. Comm'r
Docket No. 22263.
United States Tax Court
1951 Tax Ct. Memo LEXIS 358; 10 T.C.M. (CCH) 29; T.C.M. (RIA) 51009; January 12, 1951
*358 Christopher Del Sesto, Esq., for the petitioner. Leo C. Duersten, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion Respondent determined a deficiency in petitioner's income tax for the taxable year 1946 in the amount of $674.02, attributable to the disallowance of certain deductions, namely: (a) depreciation in the amount of $700; (b) repairs and other expenses in the amount of $2,525.30; and (c) medical expense in the amount of $132. Findings of Fact Petitioner, a widow, was 67 years old at the time of the hearing in 1949. She resides in Providence, Rhode Island, and filed her individual income tax return for the calendar year 1946, prepared on the cash receipts and disbursements basis, with the collector of internal revenue for the district of Rhode Island. During 1946 petitioner owned two parcels of rental property at 323 and 410 North Main Street, Providence, Rhode Island. She did not reside at either of them. The property located at 323 North Main Street was purchased by petitioner and her husband as joint tenants in 1922 at a total cost of $17,000, which was allocated to land and building in the amounts of $3,000 and $14,000, *359 respectively. For years prior to 1946 depreciation was taken on the building at the rate of 2 per cent per annum. The undepreciated cost of the building at December 31, 1945, was $7,560. The property located at 410 North Main Street was purchased by petitioner and her husband as joint tenants in 1923 at a total cost of $16,500, which was allocated to land and building in the amounts of $2,500 and $14,000, respectively. The building was in poorer condition than the one at 323 North Main Street. For years prior to 1946, depreciation was taken on the building at the rate of 3 per cent per annum. The undepreciated cost of the building at December 31, 1945, was $4,445. The assessed value of the North Main Street properties for real estate tax purposes in 1946 was as follows: Buildings
$7,000
$10,000
Land
1,160
1,260
$8,160
$11,260
Petitioner was entitled to depreciation in 1946 on the building at 323 North Main Street in the amount of $280, and on the building at 410 North Main Street in the amount of $420. On her return for 1946, petitioner claimed various other deductions with respect to both properties aggregating $2,903.45. Of that amount, $2,525.30 *360 was disallowed by the Commissioner. The following expenditures were made by petitioner in 1946 in connection with the properties: 1. Heating expense, $37.50, paid to A. Chase, a tenant in a store at 410 North Main Street, for furnishing heat to two tenements above the store. 2. Real estate taxes, $496.50, paid to the Collector for the City of Providence with respect to both properties. 3. Electricity, $30.00, paid to Narragansett Electric Company with respect to electricity furnished for alleyway and halls at 410 North Main Street. 4. Telephone, $30.00, being one-half of petitioner's total telephone bill at her home. There were fifteen tenants in the two properties, and the telephone was used in connection with repairs and collection of rents. The allocation of one-half the total telephone bill for such business purposes was reasonable. 5. Water, $375.72, paid to the Collector for the City of Providence, with respect to both properties. 6. Insurance, $549.38, paid to Harold Holt & Company, with respect to fire, liability and plate glass insurance for both properties. The policies covered periods extending beyond the year 1946. Premiums with respect to the year 1946 amounted *361 to $183.13. 7. Legal services, $10.00, paid to Bernard B. Abedon. 8. Advertising, $2.02, paid to Providence Journal Company, for want ad with respect to vacancy in one of the tenements. 9. Safe deposit box rental, $9.60, paid to Rhode Island Hospital Trust Company. The safe deposit box was used by petitioner for insurance policies, deeds, and other papers relating to these properties. She had no other property. 10. Plumbing expenses in the aggregate amount of $588.00. Included in this amount was a payment of $471.00 for plumbing expenses made on behalf of petitioner as a loan to her by her son, Joseph W. Ress, in discharge of petitioner's debt for plumbing work performed by one Max Goldberg. The loan was subsequently repaid by petitioner. 11. Removing ashes at 410 North Main Street, $60.00. 12. Repairs, an aggregate of $577.10, which included $350,00 paid on behalf of petitioner to A. Puerini & Sons by petitioner's son, Joseph W. Ress, as a loan to petitioner, in discharge of petitioner's debt for repairs at 410 North Main Street. The loan was subsequently repaid by petitioner. 13. Painting, $50.00. 14. Glass, $6.25, paid for setting glass in tenements at the properties. *362 15. Electrical expenses, $9.50, paid with respect to repairing electric wiring. 16. Janitor services, $72.00. During the year 1946, petitioner expended $12 for a pair of eyeglasses, $40 for elastic stockings, and $148 for medicines and physicians' services. Opinion RAUM, Judge: The issues presented by this case are primarily factual. 1. Depreciation. We are satisfied from the evidence as to the cost of the properties, their estimated useful life, and the amount of depreciation already taken thereon, that petitioner was entitled to depreciation for the year 1946 in the amount of $280 with respect to 323 North Main Street and in the amount of $420 with respect to 410 North Main Street. 2. Business expenses. Similarly, we are satisfied that the expenditures detailed in our findings, in paragraphs numbered 1 through 16, were actually made in 1946 and that they constitute ordinary and necessary expenses in carrying on a business. They are all deductible in full in 1946, except for the insurance premiums which must be prorated in accordance with the rule of Commissioner v. Boylston Market Ass'n, 131 Fed. (2d) 966 (C.A. 1). See G.C.M. 23587, 1943 Cum. Bull. 213. *363 Respondent contests the deductions of $471 paid to Max Goldberg for plumbing services and $350 paid to A. Puerini & Sons for repairs, on the ground that the payments were made, not by petitioner, but by petitioner's son. We disagree. True, the checks were drawn by petitioner's son, but they constitute loans to her which were actually repaid. Had her son advanced the cash to petitioner and had petitioner then made the expenditures, there could be no question as to deductibility. We think that this is in substance what was done. The transactions were not a sham. Petitioner became obligated for the amounts advanced, and in fact repaid them thereafter. We conclude that all of the expenditures enumerated in the foregoing numbered paragraphs are deductible, except the insurance premiums which are deductible only to the extent of $183.13. 3. Medical expenses. The proof is clear that $12 was expended for eyeglasses, and $40 for elastic stockings. The $148 item is an estimate, but in the circumstances of petitioner's age and the credible testimony that she was consulting a physician in Boston during the year 1946, we accept that estimate as reasonable. We therefore conclude that petitioner *364 made medical expenditures in the aggregate amount of $200 during the year 1946, which are deductible under Section 23 (x) of the Internal Revenue Code to the extent that they exceed 5 per cent of her adjusted gross income. Decision will be entered under Rule 50.