Nicath Realty Company, Inc. v. Commissioner. Nicholas Hummel and Catherine Hummel v. Commissioner.
Nicath Realty Co. v. Commissioner
Docket Nos. 2305-64, 2306-64.
United States Tax Court
T.C. Memo 1966-246; 1966 Tax Ct. Memo LEXIS 40; 25 T.C.M. (CCH) 1260; T.C.M. (RIA) 66246; October 31, 1966
*40 1. Individual petitioners rented a residence to their son-in-law and his family at an inadequate rental. Held, deductions for depreciation and expenses in connection with such residence were properly disallowed. It was not property used in a trade or business, nor property held for production of income. 2. Held, apartment furnished petitioners rent-free by controlled corporate employer was not furnished for convenience of employer within meaning of section 119. 3. Respondent allocated part of deductions by corporate employer for expenses and depreciation to apartment furnished petitioners. Held, such allocated expenses were not deductible as ordinary and necessary business expenses; held, further, to extent of occupancy by petitioners the properties were not used in a trade or business or held for production of income, consequently, deduction for allocated depreciation properly disallowed. 4. Deductions claimed by corporate employer for salaries were disallowed in part. Held, such disallowance was proper. Reasonable compensation of petitioners determined. 5. Petitioners deducted expenses and depreciation in connection with use of automobile in 1959 on basis of 90 percent *41 business usage. Held, business usage was 50 percent. Deductions disallowed accordingly. Theodore Tenny, Com. Bldg., Kansas City, Mo., for the petitioners. Donald W. Geerhart, for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: Some of the facts have been stipulated and are so found. Nicholas and Catherine Hummel, the petitioners in Docket No. 2306-64, are husband and wife. They filed joint Federal income tax returns for the years in question with the district director of internal revenue at Kansas City, Missouri. The respondent determined deficiencies in their returns as follows: Calendar
Year
Amount
1959
$534.60
1960
558.58
1961
528.73
*43 Nicath Realty Company, Inc., the petitioner in Docket No. 2305-64, is a Missouri corporation, 99 percent of its stock was owned by Nicholas and Catherine Hummel; during the years in issue Catherine owned 50 percent and Nicholas 49 percent. Nicath filed its returns for the periods in question with the district director of internal revenue at Kansas City, Missouri. The respondent determined deficiencies in its returns as follows: Taxable Year
Ended
Amount
August 31, 1960
$1,428.36
August 31, 1961
1,434.18
August 31, 1962
1,735.88 The corporate and individual cases, which involve common questions of law and fact, were consolidated for trial. The cases present the following issues: 1. Whether the Hummels are entitled to deductions for expenses and depreciation in connection with the rental of a home to their son-in-law and his family; 2. Whether the Hummels are required to include in income the fair rental value of an apartment furnished them rent-free by Nicath; 3. Whether Nicath is entitled to deduct that portion of expenses and depreciation attributable to the apartment furnished by it to the Hummels; 4. Whether Nicath is entitled to deductions for *44 officers' salaries in excess of the amounts allowed in the statutory deficiency notice; and 5. Whether the Hummels are entitled to a deduction for expenses in connection with the use of an automobile in 1959 in excess of the amount allowed in such notice. The respondent disallowed a deduction for contributions claimed in 1960 by the Hummels. They alleged error with respect to such disallowance in their petition, but they presented no evidence on the point. We have therefore treated their contentions with respect thereto as abandoned. The Hummels have conceded that a deduction of $926.85 [1] claimed by them in 1959 for expenses of maintaining the apartment in which they resided during that year was properly disallowed. The computation of the amount of medical expenses deductible by the Hummels in 1960 and 1961 is dependent upon the resolution of other issues. Respondent has conceded that Nicath is entitled to an additional depreciation deduction of $1,715.76 (over the amount returned) for its taxable year ended August 31, 1961. Home Rental Issue During 1959 the Hummels, as individuals, owned and operated *45 two apartment buildings. They were located at 4800-02 Roanoke Parkway and 4730-32 Summit Street, Kansas City. The building on Summit Street was acquired in 1952. The building on Roanoke Parkway was acquired in 1954. On April 8, 1960, the Hummels formed the petitioner Nicath Realty Company, Inc., to which they contributed the two buildings subject to mortgages in return for stock. For several years prior to the formation of Nicath the Hummels had derived an annual income of approximately $10,000 from their ownership and operation of the two apartment buildings. Although Nicath was not in fact formed until April 8, 1960, its accounting records were set up as though it had been incorporated on January 1, 1960. These records indicate that all receipts and liabilities of the Hummels in connection with the two apartment buildings were assumed by Nicath as of January 1, 1960. In 1951 the Hummels purchased a three-bedroom residence located at 8406 Belinder Avenue, Leawood, Kansas, at a cost of $26,816.27. Between August 1951 and the date of the trial herein the Belinder Avenue residence was occupied by the Hummels' daughter and son-in-law, Richard W. Schweiger. There was no written lease. *46 The rental during the years in question was $68 per month, for a yearly total of $816. During 1960 the Hummels paid $5,000 for the addition of a bedroom and bathroom to the rear of the Belinder Avenue residence. These rooms were added to accommodate an increase in the size of the Schweiger family. The Hummels claimed a deduction in 1960 of $617.33 for repairs to the Belinder Avenue residence. The Schweigers made certain expenditures for maintenance of the interior and upkeep of the lawn and shrubbery. The following such expenditures were proved for the years in question: Expenditures
1959
1960
1961
Storm Window
$ 8.52
Lawn Care
$20.00
20.00
$20.00
Toilet Repair
12.51
Sewer Tax
15.00
15.00
15.00
$35.00
$43.52
$47.51
The Leawood area is considered an excellent neighborhood with some homes worth $75,000 to $100,000. Property values in that area have, in general, increased since 1950. The fair market value of the Belinder Avenue residence has never declined since its purchase by the Hummels. After the $5,000 addition in 1960 it had a fair market value of at least $32,000. At no time did the Hummels try to rent the property to anyone other *47 than their daughter and son-in-law. They made no effort to secure opinions from realtors as to the amount of rent the residence might command. The Hummels reported total gross rental income in 1959 of $28,601.81, and expenses and depreciation of $20,040.18, for net rental income of $8,561.63. These figures covered the Roanoke and Summit apartments and the Belinder house, and with the exception of depreciation of $644.13, the deductions claimed with respect to the Belinder Avenue property were not separately itemized. Respondent, inter alia, increased the Hummels' rental income for 1959 by $825.63, an amount which he determined to be the "net costs unallowable" attributable to the Belinder Avenue property. In order to arrive at such figure, respondent determined that a total of $1,641.63 of the claimed deductions were attributable to the Belinder Avenue residence, which allocation is uncontested by the Hummels. They received rent from this property in 1959 in the amount of $816. Respondent subtracted such rental income from the determined deductions to arrive at his "net costs unallowable" figure of $825.63, and increased taxable income by that amount. The effect of respondent's action *48 was to disallow the deductions for expenses and depreciation in connection with the residence but only to the extent they exceeded rental income. This was generous to the Hummels because respondent did not add the $816 gross rent received on the Belinder Avenue residence back into their income and there was no showing that deductible interest and taxes equaled or exceeded that amount. In 1960, the year in which Nicath was formed, the Hummels reported rental income of $816, all of which was attributable to the Belinder Avenue residence. They also claimed a depreciation deduction of $754.63 and deductions for expenses with respect to the residence as follows: Interest
$489.73
Taxes
349.69
Insurance
74.53
$839.42
Miscellaneous
40.00
Repairs
617.33 The expense and depreciation deductions totaled $2,325.91, which, when offset against rental income, produced a net loss of $1,509.91. Respondent increased the Hummels' taxable income by that amount but also determined that they were entitled to a deduction of $755.28 [2] for unreimbursed interest and tax expense in connection with the Belinder Avenue residence. *49 In 1961 the Hummels again reported $816 of rental income as to the Belinder property. They claimed a depreciation deduction of $805.89 and deductions for the following expenses: Interest
$454.34
Taxes
445.47
Insurance
100.80
$899.81 The expense and depreciation deductions totaled $1,806.50, which, when offset against rental income, produced a net loss of $990.50. Respondent increased the Hummels' taxable income by the amount of the claimed loss, $900.50, and determined that they were entitled to a deduction of $184.61 [3] for unreimbursed interest and tax expenses. The Hummels appear to have asserted error in their petition with respect to respondent's methods, as explained in footnotes 2 and 3, but they have presented no evidence nor any argument thereon. The Hummels' contention with respect to all the years in issue is that they are entitled to deduct expenses incurred in connection with the Belinder Avenue residence under sections 162(a) or 212(2) and take depreciation deductions *50 with respect thereto under section 167(a). [4]
The deduction permitted by section 162(a) is for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." In order to be classed as a trade or business, activities must be carried on with the expectation of profit. It is clear that in the instant case the Hummels harbored no hope of profiting from the rental arrangement with their son-in-law and daughter. Their activities in connection therewith therefore did not constitute the carrying on of a trade or business. Samuel Yanow, 44 T.C. 444, 451-52 (1965), affirmed per curiam 358 F. 2d 743 (C.A. 3, 1966). Section 212(2) permits a deduction for individuals for all the ordinary and necessary expenses paid or incurred during the taxable year "for the management, conservation, or maintenance of property held for the production of income." *51 Section 1.212-1(b), Income Tax Regs., provides: The term "income" for the purpose of section 212 includes not merely income of the taxable year but also income which the taxpayer has realized in a prior taxable year or may realize in subsequent taxable years; and is not confined to recurring income but applies as well to gains from the disposition of property. For example, if defaulted bonds, the interest from which if received would be includible in income, are purchased with the expectation of realizing capital gain on their resale, even though no current yield thereon is anticipated, ordinary and necessary expenses thereafter paid or incurred in connection with such bonds are deductible. Similarly, ordinary and necessary expenses paid or incurred in the management, conservation, or maintenance of a building devoted to rental purposes are deductible notwithstanding that there is actually no income therefrom in the taxable year, and regardless of the manner in which or the purpose for which the property in question was acquired. Expenses paid or incurred in managing, conserving, or maintaining property held for investment may be de-deductible under section *52 212 even though the property is not currently productive and there is no likelihood that the property will be sold at a profit or will otherwise be productive of income and even though the property is held merely to minimize a loss with respect thereto. Catherine testified as follows: Q. Would you tell the court whether or not you considered this property worth keeping from the profit standpoint? A. Well, I though so. Today we would sell it and make a profit on it, because their family was increasing and I thought they would leave. They wouldn't stay there. So I assume I intended to sell it and I took it for that purpose, as an investment. The question comes down to whether the Hummels held the Belinder Avenue residence for the production of income within the meaning of the statute or held it to provide a home for their daughter and son-in-law? The objective evidence of record compels the conclusion that the latter was their purpose. The rent received by the Hummels was grossly out of line with the value of homes in the neighborhood, with the value of the particular home involved, and with the expenses of maintenance and repair. The Humels paid $5,000 for an addition to *53 accommodate an increase in the size of their daughter's family, but they obtained no adjustment in rent during the years in issue. They did not attempt to rent the property to outside parties or even to ascertain what its rental value would be in an arm's-length transaction. We are not impressed by Catherine's testimony that she anticipated sale of the residence at a profit. If that were enough to establish that property was held for the production of income, rare indeed would be the homeowner who purchased a home several years ago who could not make the same claim. See Mel Dar Corporation v. Commissioner, 309 F. 2d 525 (C.A. 9, 1962), affirming a Memorandum Opinion of this Court, certiorari denied 372 U.S. 941 (1963). The record reveals no attempts by the Hummels to sell the property during the many years they owned it. The Belinder Avenue residence was not held for the production of income. Samuel Yanow, supra, 452-453. The deduction for depreciation is permitted for property used in a trade or business or held for the production of income. Section 167(a). What has been said above with respect to the application of identical language *54 in sections 162(a) and 212(2) applies equally here. Respondent's disallowance of the deductions for expenses and depreciation in connection with the Belinder Avenue residence is sustained, and since the method employed by him to arrive at deductions for interest and tax expenses resulted in over-all excess allowances, it is sustained. Lodging, Expenses and Salaries Issues When the Hummels first acquired the apartment buildings on Roanoke Parkway and on Summit Street they were living at 4539 Roanoke Parkway. The record does not reveal when they moved to the building at 4800-02 Roanoke Parkway. After the sale of the Roankoe Parkway and Summit Street apartment buildings by Nicath in May of 1964 the Hummels continued to reside in the apartment they occupied during the years in issue, and then paid a monthly rental of $125 plus electric bills. The Roanoke Parkway building is located near a shopping center. The Hummels were pleased with the neighborhood. Catherine testified that she was on 24-hour duty at the apartment. In support of this assertion she testified that it was sometimes necessary to get up at odd hours of the night or morning to let in tenants who had locked themselves *55 out. There is no direct evidence in the record as to the number of apartments in the two buildings owned by Nicath. It can be inferred however, from gross rentals, that Nicath did not normally have more than about 20 apartments rented to tenants. There is no evidence as to the distance between the two apartment buildings. The record contains no evidence of the frequency of demands for keys. Catherine testified that she "worked like a dog." She cleaned, painted walls, scrubbed halls, refinished floors, "pitched trash," swept lawns, picked weeds, hung wallpaper, and arranged for carpentry work and furnace repair. Catherine acknowledged that the corporation employed a janitor during the years in issue. She asserted, however, that janitors did not stay long on the job and were not diligent in the performance of their duties, which she described as burning trash. Catherine used one room of her apartment as an office. Most of the tenants paid their rent by personal delivery to Catherine at her apartment. Catherine testified that she had no difficulties in rent collection. She kept rough, hand-written records and periodically took them to an accountant. Catherine testified that her *56 husband did interior decorating, plumbing and landscaping. She also testified that he was ill for two years, although she was not sure of the exact dates. Her testimony suggests that Nicholas was hospitalized and recuperated at home during some part of the years in issue. While he was recuperating at home he was at least partially incapacitated. Catherine testified that she took care of her husband and the two apartment buildings at the same time. The rental value of the apartment furnished the Hummels by Nicath has been stipulated to be $125 per month or $1,150 per year. Respondent increased the Hummels' income in 1960 and 1961 by the latter figure. The Hummels argue that the value of such lodging is excludable from their gross income under section 119 of the 1954 Code. [5] They argue that the apartment was furnished them for the convenience of their employer, Nicath, and that they were required to accept such lodging as a condition of their employment. *57 Section 1.119-1(b), Income Tax Regs., provides as follows: The value of lodging furnished to an employee by the employer shall be excluded from the employee's gross income if three tests are met: (1) The lodging is furnished on the business premises of the employer, (2) The lodging is furnished for the convenience of the employer, and (3) The employee is required to accept such lodging as a condition of his employment. The requirement of subparagraph (3) of this paragraph that the employee is required to accept such lodging as a condition of his employment means that he be required to accept the lodging in order to enable him properly to perform the duties of his employment. * * * The provision in the regulation that the phrase "required as a condition of employment" means required in order for the employee to perform properly the duties of his employment has been accepted by the courts and used in determining whether lodging furnished by an employer met the test of being furnished for the convenience of the employer. See Mary B. Heyward, 36 T.C. 739, 743 (1961), *58 affirmed per curiam, 301 F. 2d 307 (C.A. 4, 1962); United States Junior Chamber of Commerce v. United States, 334 F. 2d 660, 663 (Ct. Cl. 1964). Catherine's testimony that she was on call 24 hours a day to furnish keys to tenants who locked themselves out falls far short of establishing that the apartment was furnished to the Hummels for the convenience of Nicath. Sisincenicath's twenty tenants lived in two separate buildings it is apparent that the discharge of this phase of the Hummels' duties did not require their presence at one of the buildings after normal business hours. Cf. Gordon S. Dole, 43 T.C. 697 (1965), affirmed per curiam 351 F. 2d 308 (C.A. 1, 1965). As to the arduous and significant tasks of maintenance and repair which the Hummels undertook to perform no reason is suggested why it was necessary to the proper performance of such services that the Hummels live on the premises. The same is true of Catherine's minimal record keeping and rent collecting activities. The services performed by the Hummels were much less extensive than those furnished by a hotel manager whose duties include supervision of hotel *59 functions, including entertainment and meals, long after normal working hours. Cf. Arthur Benaglia, 36 B.T.A. 838 (1937). The Hummels lived nearby before the buildings were acquired and continued to live in the Roanoke Avenue building after it was sold. While some convenience to the employee is not fatal to a claim under section 119, cf. William I. Olkjer, 32 T.C. 464 (1959), in the instant case the convenience of the employees was quite clearly the primary factor in determining where the employees lived. For reasons hereinafter set forth the fair rental value of the apartment cannot be regarded as having been furnished as reasonable compensation for services rendered by the Hummels. We are of the view that the fair rental value should be treated as a constructive dividend to the Hummels, taxable to the extent of earnings and profits. See section 1.162-8, Income Tax Regs. Regarding the fair market value of the apartment as a constructive dividend means that the Hummels are entitled to an additional credit against tax for dividends received under section 34 as effective during the years in issue. Appropriate adjustments should *60 be made in the Rule 50 computation. Subject to that qualification, respondent's inclusion of the fair rental value in income is sustained. Nicath's returns for the years in issue do not indicate what part of its expenses were attributable to the apartment in which the Hummels lived. Respondent allocated a portion of the expenses and depreciation claimed by Nicath in each of the years in question to such apartment. The amounts so allocated were disallowed as deductions. The allocated expenses represent the use of corporate funds to pay personal and living expenses of the controlling shareholders. Accordingly, the corporation is not entitled to deduct such expenditures as ordinary and necessary business expenses. See, e.g., Greenspon v. Commissioner, 229 F. 2d 947 (C.A. 8, 1956), affirming 23 T.C. 138 on this issue. To the extent of the Hummels' occupancy, the buildings were not used in a trade or business held for the production of income. Respondent's disallowance of portions of the deductions for expenses and depreciation is sustained. [6]
*61 Nicath claimed the following deductions for officers' salaries during the years in issue: Taxable Year
Nicholas
Catherine
Ended
Hummel
Hummel
Total
August 31, 1960
$4,800.00
$2,645.48
$ 7,445.48
August 31, 1961
5,075.00
5,075.00
10,150.00
August 31, 1962
4,800.00
4,800.00
9,600.00 Nicath reported the following amounts of gross rentals and taxable income (loss) during the years in issue: Taxable
Taxable Year
Gross Rental
Income
Ended
Income
(Loss)
August 31, 1960
$18,299.88
($90.75)
August 31, 1961
29,558.30
49.40
August 31, 1962
28,026.10
99.93 The respondent determined that Nicath was entitled to deduct the following amounts as reasonable compensation to the Hummels: Taxable Year
Nicholas
Catherine
Ended
Hummel
Hummel
Total
August 31, 1960
$2,000.00
$1,333.33
$3,333.33
August 31, 1961
2,500.00
2,500.00
5,000.00
August 31, 1962
2,500.00
2,500.00
5,000.00 The only evidence introduced by Nicath in support of the deductions claimed was the testimony of Catherine concerning the nature of the services rendered by herself and her husband. The record is silent as to how *62 much time the Hummels actually spent rendering such services (apart from the alleged necessity to be present on the premises), and suggests that Nicholas was ill during part of the time. There was no evidence with respect to what would ordinarily be paid for like services by like enterprises under like circumstances. See section 1.162-7(b)(1), Income Tax Regs.
Respondent sought on cross-examination to elicit from Catherine the basis which she and her husband used in setting their salaries. Without casting doubt on Catherine's good intentions, it must be said that her answers were uninformative. Respondent points out that the salaries were set at a figure that left Nicath, after deductions for expenses, with virtually no taxable income. Respondent supports the amounts he has determined as reasonable by pointing out that the figures set by Nicath allowed no return on capital. The Hummels had an equity of at least $128,000 in the two apartment buildings. Even a modest four percent return on that investment would have yielded an annual income of more than $5,000, which, when subtracted from Nicath's annual income of $10,000 before salaries, would leave less *63 than $5,000 as a reasonable measure of the value of the Hummels' combined personal services to their corporate employer. On the entire record it seems to us that Nicath has failed to overcome the presumption that respondent's determinations as to the Hummels' salaries were correct. The amounts paid to the Hummels as excessive compensation should be treated as dividends to them, taxable to the extent of earnings and profits. Section 1.162-8, Income Tax Regs. Such treatment will entitle the Hummels to an additional credit against tax for dividends received under section 34 as effective during the years in issue. Appropriate adjustments should be made under Rule 50. Subject to that qualification, respondent's determination with respect to Nicath's deductions for salaries is sustained. Automobile Expense Issue The Hummels owned one automobile during 1959. On their return for that year they claimed deductions for oil and gas, repairs and depreciation totaling $683.27. That figure was 90 percent of the total of such costs. Respondent disallowed the claimed expenses to the extent of $303.67. The figure allowed, $379.60, represented 50 percent of the total *64 of expenses and depreciation. The Hummels' position is that 90 percent of the usage of the automobile during 1959 was for business, while respondent argues that the correct figure is 50 percent. No records were kept to show the total mileage or the business mileage put on the car in 1959. Catherine testified that the car was used to haul sand, lumber, paint and similar supplies for the Roanoke Parkway and Summit Avenue properties. She acknowledged that it was also used to make visits to her son-in-law and daughter and their family. When asked what percentage of the use of the automobile was for business in 1959, Catherine replied: Well, I would say at least 50 percent, at the very least, was used for business. At the very least. The respondent's determination is sustained. Decision will be entered under Rule 50 in Docket No. 2306-64. Decision will be entered for respondent in Docket No. 2205-64. Footnotes
1. Mistakenly referred to as $926.35 in the Stipulation of Facts.↩
2. We do not know how respondent arrived at this figure, instead of the $839.42 which was returned, but again such action was generous to the Hummels since respondent did not add back the $816 gross rent received.↩
3. Again we do not know how respondent arrived at this figure, instead of $899.81; but again the Hummels have benefited, because respondent did not add back the gross rent.↩
4. All statutory references are to the Internal Revenue Code of 1954.↩
5. SEC. 119. MEALS OR LODGING FURNISHED FOR THE CONVENIENCE OF THE EMPLOYER. There shall be excluded from gross income of an employee the value of any meals or lodging furnished to him by his employer for the convenience of the employer, but only if - (1) in the case of meals, the meals are furnished on the business premises of the employer, or (2) in the case of lodging, the employee is required to accept such lodging on the business premises of his employer as a condition of his employment. In determining whether meals or lodging are furnished for the convenience of the employer, the provisions of an employment contract or of a State statute fixing terms of employment shall not be determinative of whether the meals or lodging are intended as compensation.↩
6. It is not clear whether the allocation included a portion of expenses for taxes and interest. The deductibility of such expenses is not subject to the limitations of section 162↩. See sections 163 and 164. Since petitioner did not contest the allocation, respondent's determination retains a presumption of correctness. We therefore take it as established that expenses for interest and taxes were not included in the allocation.