**In re Gladys T. RASHID, Debtor.**

**No. CIV–88–452–P.**
**Bankruptcy No. BK–87–753–A.**

United States District Court,
W.D. Oklahoma.

Jan. 12, 1989.

Paul Anthony Albert, Elk City, Okl., for plaintiff.

Gary A. Bryant, Mock, Schwabe, Waldo, Elder, Reeves & Bryant, Oklahoma City, Okl., for defendant.

## ORDER

PHILLIPS, District Judge.

Before the Court is the appeal by City National Bank of Sayre ("Bank") of the Bankruptcy Court's February 24, 1988 Order. Appellant Bank filed its brief on April 14, 1988. Gladys Rashid ("debtor") filed her brief on May 16, 1988 to which the Bank replied on May 31, 1988. The broad issue on appeal is whether rental of a house separate from, but adjacent to, the principal residence, constitutes a business purpose so as to limit the Oklahoma homestead exemption to $5,000 pursuant to 31 Okla.Stat. §§ 1 & 2.

## I. STANDARD OF REVIEW

In reviewing a bankruptcy court's decision, the district court functions as an appellate court and is authorized to affirm, reverse or modify the bankruptcy court's ruling or to remand the case for further proceedings. Fed.R.Bankr.P. 8013. The Court is bound to accept the bankruptcy court's findings of fact unless they are clearly erroneous, but may examine its conclusions of law de novo. In re Mullet, 817 F.2d 677, 678–79 (10th Cir.1987); In re Branding Iron Motel, Inc., 798 F.2d 396, 399–400 (10th Cir.1986); A factual finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). In reviewing the factual findings, an appellate court may not weigh the evidence or reverse a finding because it would have decided the case differently. Id. A bankruptcy court's factual determination will not be disturbed on appeal absent "the most cogent reasons appearing in the record." Kansas Fed. Credit Union v. Niemeier, 227 F.2d 287, 291 (10th Cir. 1955). "The appellate court is not called upon to determine whether the trial court reached the correct conclusion of law, but rather whether it reached a permissible conclusion in light of the evidence." Dowell v. United States, 553 F.2d 1233, 1235 (10th Cir.1977).

## II. FACTS

Debtor filed her voluntary petition in bankruptcy under Chapter 7 on February 3, 1987. Debtor's husband did not file for bankruptcy protection, nor is he a debtor of Bank. In her bankruptcy petition, debtor claimed a homestead exemption for real property described as Lots 1 and 2, Block 52, Original Town of Sayre, Beckham County, Oklahoma. According to debtor's schedules the claimed homestead had a fair market value of $50,000, but a more realistic estimate is probably less.

Bank is a judgment creditor of the debtor, holding a judgment against debtor from the District Court of Canadian County in the amount of $51,718.46, plus post-judgment interest. Bank filed its claim in the bankruptcy proceedings for this amount, and no objection was filed by debtor.

Debtor owns an undivided one-half (½) interest in Lots 1 and 2, described above, as a joint tenant with her husband. The property which she claims as her homestead consists of two lots. On one lot is a house used as her personal residence. On an adjacent lot is a building used many years ago as a store; and a duplex. The two lots undisputedly comprise less than one-fourth (¼) acre. Both sides of the duplex are rented for a total income of $175 per month, and debtor's one-half (½) interest is $87.50 per month.

## III. FINDINGS & CONCLUSIONS OF THE BANKRUPTCY COURT

On February 10, 1988 trial was held on Bank's objection to debtor's claim of exempt property. The Bankruptcy Court found that the incidental use, for rental

purposes, of the duplex portion of the debtor's property did not constitute the use of the homestead for both residence and business purposes under 31 Okla.Stat. § 2 (1981), and denied Bank's objection to the claim of exempt property. The Bankruptcy Court stated:

[T]he following will be the findings and conclusions under Rule 7052—we've got a quarter acre in town on which there's a dwelling which is occupied by the debtor and her husband. And there's another little building which at one time was used as a store, but that use ceased in 1985, and it hasn't been used at all.

And, then, we have this other house, which is a duplex, and on the date the petition was filed, was rented out. So we look at the facts in existence on the date that the bankruptcy was filed. I suppose if somebody wanted to avoid the implications of this statute, it would be easy to run the tenants out, and go file your bankruptcy petition, and then let them come back in. But that didn't happen. So then we confront this statute, which really is not being construed except for this 1937 case. And I never see it come up. It's kind of perplexing. It came up in one case and then the parties —in that case, the debtor was a professional, was an accountant or a lawyer, and used part of the house for an office to carry on the profession. But that got settled, so I never had to hear that. But this is another unfortunate example of these old, antiquated exemption laws that we have in Oklahoma. We're dealing with a statute written in 1910 or sometime shortly thereafter with the realities of 1988. And the legislature, unfortunately, piecemeal picks away at these exemption provisions ... So that statute says:

"Provided further in the case the homestead is used for both residence and business purposes, the homestead interest shall not exceed the value of the sum of five thousand dollars."

In here, it's also unquestioned that the property, the entire quarter acre is worth ... more than $5,000. Now, in this old decision, Judge Kennamer goes back and reviews some of the history of the provision, and discusses what is and what's not business. And, of course, this case is from the Northern District and not the Western District. He adopts a very broad definition of business, saying it embraces everything about which a person can be employed; and, therefore, holds that the renting of the duplex is within the Constitutional provision. I'm not so sure that that's the proper construction. I think what the legislature was doing was seeking to get at those situations where someone is actually conducting some kind of a business on the homestead. As an example here, if the store had been in operation at that time, where you've got customers coming and going, you've got traffic, you've got everything that that entails, I think that's what we're talking about, not just the mere renting out of a duplex to a couple of tenants. So I'm going to say, number one, that this debtor was not conducting a business as that term is interpreted by me. Number two, you can also read the statute to say, and as I've indicated before, this statute's been hacked at, picked at, changed and amended on a piecemeal basis; so it's hard to really read it with any continuity. But you can read it to say that the legislature took away the $5,000 limitation for the quarter acre homestead, and that if you reduced the homestead down to a quarter acre, there are no value limitations. Granted, you've got to read between the lines to achieve that result; but, fortunately I have the ability to do that. And I'm going to also look at Section 105(a) of the Bankruptcy Code, which says: "The Court may issue any order necessary to carry out the provisions of this title." Well, what do we have here? From the evidence we have the debtor who inadvertently and unintentionally became obligated on the guaranty of her brother's debt at the Bank. Why the brother didn't pay it, I don't know that. But this was not her intention. Unfortunately, she didn't have a lawyer at that time; she apparently didn't have a lawyer at the time the case went to judgment in

state court. But, as I say, that's unfortunate. But I do know that it's the purpose of the Bankruptcy Code to provide the honest debtor a fresh start. And, here, she obviously needs this property and this $175 monthly income to get the fresh start for which she's entitled by the federal statute. So as a third grounds for denying the motion, I'm going to apply Section 105(a), and say that in order to carry out the fresh start provisions of the Bankruptcy Code, it's necessary to enter an order denying the Bank's motion.

Transcript at 40–43 (Feb. 10, 1988).

## IV. FINDINGS AND ANALYSIS

The issues presented to the Court are whether the Bankruptcy Court erred in finding and concluding: (1) the homestead property claimed by debtor was not used for both business and residential purposes pursuant to 31 Okla.Stat. § 2; (2) the legislative intent of 31 Okla.Stat. § 2 was to remove the $5,000 limitation on homestead exemption where the total property involved was one-quarter acre or less; and (3) the bankruptcy court has the authority under 11 U.S.C. § 105 to create an exemption for property that is not statutorily exempt.

A. *The Value Limitation On Homesteads Used Both As A Residence And For Business Purposes*

■ Oklahoma law is determinative of allowed exemptions for debtors who file bankruptcy in Oklahoma. *In re Pelter,* 64 B.R. 492, 495 (Bankr.W.D.Okla.1986). Under Oklahoma law a home that is the principal residence is exempt from forced sale for the payment of debts except as provided by statute.[1] 31 Okla.Stat. § 1(A)(1).

Homestead is defined by an *in pari materia* statute:

The homestead of any family in this state ... within any city or town, owned and occupied as a residence only, shall consist of not exceeding one (1) acre of land, to be selected by the owner. Provided, that the same shall not exceed in value the sum of Five Thousand Dollars ($5,000.00), and in no event shall the homestead be reduced to less than one-quarter (¼) of an acre, without regard to value: And provided, further, that in case said homestead is used for both residence and business purposes, the homestead interests therein shall not exceed in value the sum of Five Thousand Dollars ($5,000.00): And provided, further, that any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired.

31 Okla.Stat. § 2; *see also* OKLA. CONST., art. XII, § 1 (constitutional provision is essentially identical to statutory provisions but the statute extends the exemption to single adults).[2]

The Oklahoma Constitution expressly provides that the Legislature may "change or amend" article XII dealing with homesteads and exemptions, but the Legislature has not changed the business purpose language, including the value limitation, since its inclusion in 1910. OKLA. CONST., art. XII, § 3; *see Kerr v. Garrison,* 101 Okl. 101, 101, 223 P. 609, 609 (1924) (court syllabus).

Since the homestead property in this case is less than one quarter acre, the Bankruptcy Court's Order can be affirmed if the Court finds that there is no dollar limita-

---

**1.** The homestead is not impervious to forced sale. Whenever a home exceeds the value or quantity limitations of the exemption, then the home can be forcibly sold, and the debtor can be monetarily reimbursed for the exempt homestead interest. *See* Annotation, *Lien of Judgment on Surplus in Quantity or Value of Homestead,* 32 A.L.R. 1333, 1334 (1924) (excess is subject to alienation); *see also Dallas Ceramic Co. v. Morgan,* 560 P.2d 197, 200 (Okla.1977) (value equals fair market value less encumbrances); *In re Siegmann,* 757 P.2d 820, 825

(Okla.1988) (value/quantity distinction). The homestead is further subject to forced sale in the event of default on the mortgage, eminent domain, enforcement of mechanic's and materialmen's liens, or delinquent payment of taxes; *see, e.g.,* OKLA. CONST., art. XII, § 2.

**2.** *See generally In re Shields,* 85 B.R. 582, 583–84 (Bkrtcy.N.D.Okla.1988) (excellent discussion of differences among constitutional, debtor, probate, rural, and urban homesteads).

tion on a homestead used for business and residence purposes as long as the homestead is on one-quarter acre or less.

The Bankruptcy Court found "that the legislature took away the $5,000 limitation for the quarter acre homestead." Transcript at 42. Collier makes the same statutory interpretation: "[T]he urban homestead exemption [in Oklahoma] may not exceed $5,000 except that in all cases the urban homestead shall not be reduced to less than ¼ acre." 7 *Collier On Bankruptcy*, p. 530 (1988).

Exemption laws are liberally construed and "the administration of an exemption law should comport with the beneficent spirit that prompted its enactment." *In re Wineland*, 3 F.Supp. 796, 798 (N.D.Okla. 1933); *In re Siegmann*, 757 P.2d 820, 828 (Okla.1988). The purpose of the homestead exemption is to protect the place of abode, the home. *Id.* But another purpose is the just protection of creditors, and the Oklahoma Legislature has balanced those competing interests by limiting the homestead by quantity or value, or both. For example, the Legislature placed a maximum ceiling of 160 acres on rural homesteads. 31 Okla.Stat. § 2. However, there is no minimum quantitative floor for the rural homestead, and courts have carved-out the homestead when the claimed land failed to be "impressed with the homestead character." *See, e.g., In re Shields*, 85 B.R. 582, 584 (Bkrtcy.N.D.Okla.1988). In comparison, on urban homesteads *owned and occupied as a residence only* the Oklahoma Legislature has placed a quantity and value range between a one-quarter acre minimum without regard to value, and up to a one acre maximum provided the value does not exceed $5,000. 31 Okla.Stat. § 2.

However, the next provision in 31 Okla. Stat. § 2, beginning significantly with "Provided, further", creates a harsh limitation on the homestead exemption, because when a homestead is used for "both residence and business purposes, the homestead interests therein shall not exceed in value the sum of five thousand dollars." The Court believes this provision means only what it says and nothing further. As

a practical matter, a homestead used for both residence and business purposes loses the minimum one-quarter acre size limitation of the homestead owned and occupied as a residence only. *See Finerty v. First Nat'l Bank*, 92 Okla. 102, 103, 218 P. 859, 860 (1923).

Oklahoma rarely preserves legislative history. However, the Legislature's apparent intent in drafting the "business purposes" language in the homestead exemption statute can be inferred by analyzing *DeFord v. Painter*, 3 Okla. 80, 88, 41 P. 96, 104 (1895), and by recognizing the consequent change of the statute.

In *DeFord v. Painter*, the Oklahoma Territorial Supreme Court construed the then existing homestead exemption statute. That statute provides: "Homestead in a city, town or village, consisting of a lot or lots, not to exceed one acre with the improvements thereon; provided, that the same shall be used for the purpose of a home for the family." 34 Stat. of Okla., *Exemptions*, § 2845 (1893) (repealed 1910), *cited in* 3 Okla. at 88, 41 P. at 104. In *DeFord* the debtor owned a building in the business district of Guthrie. The debtor lived in a portion of the second floor and rented the rest of the building to others. The Territorial Supreme Court granted a homestead exemption on the entire building. *DeFord v. Painter*, 3 Okl. at 88, 41 P. at 104, *reported in, In re Booth*, 18 F.Supp. 79, 80 (N.D.Okla.1937). The Territorial Supreme Court lamented that its holding did not have a just result, but noted that if the Territorial Legislature wanted to change the statute, it could. Significantly, in 1910 the statute was changed to include the "business purposes" language with its value limitation that remains in the present statute. Without question it was the *DeFord* case that prompted that change. *In re Booth*, 18 F.Supp. at 80–81.

Therefore, consistent with the apparent legislative intent, the Court finds that the statute provides that when an Oklahoma homestead is used for both residence and business purposes there is no minimum quantitative limitation. Instead, there is

only a dollar value limitation. *In re Booth,* 18 F.Supp. at 82; *Finerty v. First Nat'l Bank,* 92 Okla. at 103–04, 218 P. at 860–61.[3] This must be the proper construction of the statute; otherwise, there would have been no reason in 1910 for the Legislature to insert the "owned and occupied as a residence only" language, and the "both residence and business purposes" language.

Making the law is the Legislature's job. This Court's duty is a narrow one—to interpret the law, not make it. The presumption in statutory construction is that the Legislature does not perform a meaningless act. *In re Siegmann,* 757 P.2d at 822; *Abbott v. Board of Trustees,* 586 P.2d 1098, 1101 (Okla.1978); *Thornton v. Woodson,* 570 P.2d 340, 341–42 (Okla.1977). To construe the statute in contravention to its expressed mandate would permit a debtor who lived in one unit of a thirty-unit apartment building on a quarter acre or less to exempt the entire building as homestead. That situation was obviously the mischief that the Oklahoma Legislature was specifically attempting to prevent in 1910. *See In re Booth,* 18 F.Supp. at 81; *DeFord v. Painter,* 41 P. at 104.

**B.** *Limits On The Equitable Powers Of The Bankruptcy Court To Expand Statutory Exemptions*

■ The Bankruptcy Court used its section 105(a) powers to give the debtor a fresh start by determining that the debtor did not intentionally become obligated on the guaranty of her brother's debt to the Bank, and that she needed the income of the duplex for her fresh start. 11 U.S.C. § 105(a). While the Bankruptcy Court is a court of equity, its equitable powers to avoid the express language of statutes are limited. *See, e.g., Official Comm. of Equity Sec. Holders v. Mabey,* 832 F.2d 299, 302 (4th Cir.1987), *cert. denied, Mabey v. Official Comm. of Equity Sec. Holders of A.H. Robins Co.,* —— U.S. ——, 108 S.Ct. 1228, 99 L.Ed.2d 428 (1988); *United States v. Sutton,* 786 F.2d 1305, 1307–08 (5th Cir. 1986); *Guerin v. Weil, Gotshal & Manges,* 205 F.2d 302, 304 (2nd Cir.1953); *In re Robinson Bros. Drilling, Inc.,* 97 B.R. 77 (W.D.Okla.1988).

The Court finds that the Bankruptcy Court does not have sufficient authority under 11 U.S.C. § 105(a) to construe 31 Okla.Stat. § 2 to circumvent its plain wording and apparent intent. *In re Estate of Wallace,* 648 P.2d 828, 834 (Okla.1982) (citing *In re Wineland,* 3 F.Supp. at 796).

**C.** *Determination Of Business Purposes*

■ Finally, having found that the $5,000 limitation applies to any urban homestead used for residence and business purposes, regardless of equity considerations, the Court must determine whether the Bankruptcy Court erred in determining that the rental of the duplex was not for a business purpose pursuant to 31 Okla.Stat. § 2. This Court finds that the Bankruptcy Court did err, and thus the decision of the Bankruptcy Court cannot stand.

■ What constitutes a "business purpose" under the Oklahoma statute presents a perplexing problem. For example, courts may have to determine whether a business purpose is unexpectedly triggered if there is mere profit-seeking activity within the home.[4] Fortunately, the question now be-

---

**3.** The Court in *Finerty* stated:
The term "homestead" means that tract of land which, being within the statutory *limitations as to quantity and value,* is occupied and claimed as homestead.... The value and the quantity together create the excess above the homestead protected from sale for the payment of debts. Does that excess consist of value or quantity? That must be determined by the language of the homestead act, if possible.... In the urban homestead used for both residence and business purposes the limitation is $5,000 in *value* ... and a limitation on value attaches when the homestead

... is used for business as well as residence purposes.
92 Okla. at 103–04, 218 P. at 860–61 (emphasis supplied).

**4.** The Court is aware that the dollar value limitation on homesteads has far-reaching ramifications for debtors that use their residences for business purposes. The task of the courts, however, is not to re-write the statutes. The Oklahoma Legislature can raise the value limitation or specifically define what "business purposes" means if it so chooses. *See generally* 5A *Words & Phrases,* 739–42 & Supp. at 121 (1968 & Supp.

fore this Court is more narrow: whether the rental of a duplex located on the claimed homestead constitutes a business purpose. Another district court within this State has answered that very question affirmatively. *In re Booth*, 18 F.Supp. at 81. This Court agrees that the rental of a duplex on the claimed homestead constitutes a business purpose, but the appeal is not resolved so easily. *See Hazard v. Commissioner of Internal Revenue*, 7 T.C. 372 (Acq.) (1946) (Commissioner's view is that a taxpayer who rents out a single piece of property is engaged in business).

## V. DETERMINATION OF ABANDONMENT OF EXEMPTION ON A PORTION OF THE HOMESTEAD

■ This Court has found that there is a $5,000 value limitation on homesteads used as both a residence and for business purposes; that the Bankruptcy Court cannot alter this exemption through its equitable powers; and that rental of the duplex is a business purpose. Ordinarily, this Court would remand the case to the Bankruptcy Court in order to fashion an appropriate remedy. However, this Court has a necessary record before it to make a proper determination of a partition, and therefore remand is unnecessary. Accordingly, having gone through this lengthy analysis the Court finds that a portion of the debtor's homestead exemption has been abandoned,

thus taking that portion out of 31 Okla. Stat. § 2.

In *Booth* there were facts remarkably similar to the present case. Both cases involve a rented duplex located on the claimed homestead. *In re Booth*, 18 F.Supp. at 80. In *Booth* the court found that the debtor did not lose the homestead exemption because no land was leased or rented, nor any particular part of the tract was set aside for the use of the occupants of the duplex. *Id.* at 82. Another significant fact in *Booth* was the duplex was located on a single 33.34' × 140' tract or piece of land and "there would have been great difficulty in determining how much should be allotted to the duplex." *Id.* at 80, 82.

The facts in the instant appeal are significantly distinguishable from *Booth* regarding abandonment of the homestead exemption. First, this Court notes from pictures of the duplex provided in the record that it is located on a lot that is physically separated by an alley from the adjacent lot where the debtor's home is located. Bank's Trial Exs. 3 & 7. Therefore, in the instant appeal a partition is practical, and unlike the duplex in *Booth*, it is feasible to partition the property without material injury to the lot containing debtor's home. *See In re Booth*, 18 F.Supp. at 83. The Court further notes from the trial exhibits that the

1988) (business purpose includes boarding house, residence also used for business of masseur, and manufacturing of intoxicating liquor for sale, but not sleeping rooms for lodgers); and *RESTATEMENT OF TORTS*, §§ 391–40 (examples of business purposes).

*Prima facie* evidence of a business purpose could be established if the debtor claims an income tax deduction for business use of the home. Generally, this deduction may be claimed by a taxpayer who exclusively and regularly uses a portion of the home (1) as the principal place of business for any trade or business in which the taxpayer is engaged; (2) as a place to meet or deal with patients, clients, or customers in the normal course of business; or (3) in connection with a trade or business using a separate structure that is not attached to the house or residence. Further, the deduction can be claimed if these conditions are met, and also the home is used for the convenience of the taxpayer's employer. Storage of inventory and use as a day-care facility are two exceptions to

the exclusive use rule. Profit-seeking activity that is unconnected to a trade or business is disallowed in determining the deduction. I.R.S., *Business Use Of Your Home*, Pub. 587 (Rev. Nov. 1987). "Neither the law nor regulations provide a definition of what is meant by a 'trade or business.' This is so because no one definition can possibly apply to all situations." *Standard Fed. Tax Reporter* ¶ 1332 (CCH) (1987); *see also* I.R.S., *Rental Property*, Pub. 527 (Rev. Nov. 1987). If debtors claim an income tax deduction for a business use of their home, then they would be estopped from denying they use their home for residence and business purposes under the homestead exemption laws; *see generally, Cohen v. Commissioner*, 10 T.C.M. 29 (1951) (deductible business expenses of rental property), *reported in, Standard Fed. Tax Reporter* ¶ 1332.135 (CCH) (1988) (trade or business expenses). *But see Nicath Realty Co.*, 25 T.C.M. 1260 (1966) (taxpayer who rented property to relatives for excessively low rent was not engaged in rental business).

duplex in the instant appeal evidently includes land enclosed within a fence, and the front is paved out to the street. Bank's Trial Exs. 4, 5, & 6. Therefore, since this portion of the claimed homestead, specifically consisting of the duplex, and its curtilage within the fence and the front pavement, was set aside for the exclusive use of the tenants, this Court concludes that the debtor's exemption on this parcel was abandoned. *See In re Estate of Wallace,* 648 P.2d at 828.

In this regard this Court is persuaded by the compelling logic, and the authoritative research of *In re Shields* which held that in defining a rural homestead, land is lost to the homestead that is not impressed with the homestead character. 85 B.R. at 584; *see also In re Gardner's Estate,* 122 Okl. 26, 250 P. 490 (1926) (homestead is land itself and not buildings thereon); *see generally* Annotation, *Character of Property as Homestead as Affected by its Use for Business as well as Residence Purposes,* 114 A.L.R. 209 (1938); 40 C.J.S. *Homesteads* § 37, p. 465 (1944 & Supp.1988) ("As a general rule a debtor cannot claim property or a separate building which he has entirely leased to tenants."); and 20 Okl. Dig.2d 264 (1988). *But see Exchange Nat'l Bank v. Rose,* 187 Okl. 481, 482–83, 103 P.2d 496, 497–98 (1940) (rental of portion of homestead does not destroy homestead character). Under the unique circumstances of this case, this Court concludes as a matter of law that the debtor's abandonment of the exemption of her interest in the duplex renders the "business purposes" provision of the exemption statute inapplicable.[5]

## VI. CONCLUSION

Therefore, being fully advised of the record, this Court finds that the Bankruptcy Court erred in its analysis of 31 Okla. Stat. § 2, but that statute fails to resolve the appeal because the debtor's exemption on her interest in the duplex had been abandoned. The Court notes that the debtor holds that particular piece of property in joint tenancy with her husband. Therefore, the debtor's one-half interest of the carved-out property, described above, is not subject to an exemption and is therefore a part of her bankruptcy estate. *See Finerty v. First Nat'l Bank,* 92 Okla. at 106, 218 P. at 863; *see generally,* Annotation, *Lien of Judgment on Excess Value of Homestead,* 41 A.L.R.4th 292 (1985).

Accordingly, the Bankruptcy Court's Order filed February 24, 1988 is REVERSED. The Bank shall prepare a Judgment within ten (10) days of this order which should be approved by opposing counsel as to form only.

IT IS SO ORDERED.

---

5. This is not to say that the homestead character is lost in the generation of other types of revenue as long as it is for the comfort and enjoyment of the dwelling house. Apart from renting or leasing ascertainable land on the claimed homestead, revenue to support the family is not inconsistent with the homestead, as the exemption includes a house in which to live and a means of making a livelihood. *In re Booth,* 18 F.Supp. at 82.