In re Gary Wayne FISHER and Debra Kay Fisher, Debtors.

Bankruptcy No. 90–00617–C.

United States Bankruptcy Court,
N.D. Oklahoma.

April 25, 1990.

Ronald F. Walker, Okmulgee, Okl, for debtor.

E. Carleton James, Tulsa, Okl., for Credit Union.

## MEMORANDUM OPINION

STEPHEN J. COVEY, Bankruptcy Judge.

This matter comes on to be heard upon the Motion for Turnover of Property filed

---

by Debra Kay Fisher ("Debtor"). The motion is brought pursuant to § 542(a) of the Bankruptcy Code and moves this Court to order the Oklahoma Central Credit Union ("Credit Union") to deliver property of the estate ($3,830.00) to the Trustee of her Chapter 13 proceeding, Lonnie D. Eck.[1] The respondent, the Credit Union, has filed no responsive pleading but did appear at the hearing to oppose the granting of the motion.

## STATEMENT OF FACT

On February 20, 1987, the Debtor filed a Petition for Relief under Chapter 7 of the Bankruptcy Code. The Credit Union was listed as a creditor with a claim secured by a 1984 Pontiac. The Debtor stated her intention to reaffirm said debt.

On March 17, 1987, a reaffirmation agreement and declaration of counsel was filed by the Debtor and Credit Union with the Clerk of the Bankruptcy Court. This reaffirmation agreement was dated March 16, 1987, and provided as follows:

1. That there was currently due and owing from the Debtor to the Credit Union the sum of $8,143.84.

2. That said debt was secured by a 1984 Pontiac.

3. The Debtor agreed to pay the amount at fourteen percent (14%) interest in monthly installments of $277.00 until paid in full.

4. All other terms of the original Note and Security Agreement were continued in full force and effect.

5. The agreement could be rescinded within sixty (60) days after it was filed with the Clerk of the Court.

The Debtor's attorney filed an affidavit as follows:

1. That he had reviewed the reaffirmation agreement.

2. That the Debtor was fully informed of its legal consequences and had voluntarily signed it.

3. The agreement did not impose an undue burden upon the Debtor.

On May 7, 1987, the Bankruptcy Court held a reaffirmation hearing in accordance with § 524(d) of the Bankruptcy Code. The Debtor, even though required to attend said hearing by two sections of the Code, and ordered to attend by the Bankruptcy Court, failed to do so.[2] Subsequent to the hearing she was granted a discharge of her debts pursuant to § 727(a) of the Code.

Subsequent to the execution and filing of the reaffirmation agreement, the Debtor failed to make the payments called for and on July 29, 1987, the Credit Union repossessed the Pontiac and in due course sold it.

On September 17, 1987, the Credit Union filed a Petition in the District Court of Tulsa County requesting a deficiency judgment against the Debtor in the amount of $6,116.90. On October 19, 1987, a Default Judgment was entered against the Debtor in favor of the Credit Union in the amount of $6,799.62 plus attorney fees in the amount of $1,019.00.

On January 12, 1990, the Debtor filed a Motion to Vacate the Default Judgment on the grounds that the District Court of Tulsa County lacked jurisdiction to enter said judgment because the debt to the Credit Union was discharged on May 7, 1987, and no enforceable or valid reaffirmation agreement had been entered into. On February 7, 1990, the District Court ruled that it had no jurisdiction to litigate the validity of the bankruptcy reaffirmation agreement. It overruled the Defendant's Motion to Vacate Default Judgment and further stated that said motion could be re-litigated upon a showing that the United States

---

1. Under § 542 of the Code an entity is required to deliver property of the estate to the trustee. Under § 541 of the Code property of the estate consists of all legal or equitable interest of the debtor in property.

2. Under both §§ 521 and 524(d) of the Code, a debtor who reaffirms a dischargeable debt is required to attend a reaffirmation hearing. At said hearing, the Court informs the debtor that a reaffirmation agreement is not required under the Code and the legal effect and consequences of such an agreement.

Bankruptcy Court had ruled the reaffirmation agreement unenforceable.

The Credit Union, prior to the filing of the present Chapter 13 proceeding on March 14, 1990, had involuntarily collected the sum of $3,830.00 from the Debtor on the default judgment. This proceeding is brought to recover these funds for the benefit of her estate so that they can be used to pay creditors of the estate.

## CONCLUSIONS OF LAW

The crucial issue to be decided is whether the reaffirmation agreement is enforceable and valid under § 524(c) of the Bankruptcy Code. If said agreement is not enforceable, then the debt to the Credit Union was discharged pursuant to § 727(b) of the Code and the judgment taken by the Credit Union was void pursuant to § 524(a)(1) of the Code.[3] It follows that if the monies collected by the Credit Union were collected on a void judgment, then said monies are due and payable to the Debtor, are property of her estate, and should be turned over to the Chapter 13 Trustee, Lonnie D. Eck.

Section 524(c) of the Bankruptcy Code states the requirements for an enforceable reaffirmation agreement as follows:

1. the agreement was made before the granting of the discharge;

2. the agreement contains a statement that the debtor can rescind the agreement within sixty (60) days after filing with the court;

3. the agreement is filed with the court along with a declaration or affidavit of an attorney stating that the agreement was voluntary, did not impose an undue hardship on the debtor, and the debtor was fully informed as to its legal consequences;

4. the agreement is not rescinded within sixty (60) days; and,

5. *the provisions of subsection 524(d) must be complied with.*

All of the requirements for an enforceable reaffirmation agreement have been complied with except the requirement of § 524(c)(5) that the debtor attend a reaffirmation hearing pursuant to § 524(d). As stated above, the third sentence of this section states that if the debtor enters into a reaffirmation agreement, the court shall hold a hearing at which the debtor shall appear and be informed by the court that the debtor is not required to reaffirm, and the legal consequences of a reaffirmation. Section 524(c)(5) clearly states that if such a hearing is not held, or if the debtor does not attend, the reaffirmation agreement is unenforceable.

In the present case, United States Bankruptcy Judge, Mickey D. Wilson, held a reaffirmation hearing pursuant to § 524(d) and the Debtor did not appear, even though required to by the Code and ordered to do so by the Court. The Credit Union did not monitor the reaffirmation hearing and had no knowledge that the Debtor had not attended. The Debtor did not notify the Credit Union of her failure to attend and there is no evidence in the record to show that the Credit Union was acting in bad faith when it repossessed the car and obtained the deficiency judgment.

The Credit Union argues that if this Court holds the reaffirmation agreement unenforceable and requires them to return the money because the Debtor did not attend the reaffirmation hearing, this would be rewarding the Debtor for her own wrongdoing. The Credit Union calls upon this Court to use its equitable powers and deny the Debtor's motion for turnover order on the grounds of equity and fairness.

The argument of the Credit Union has great appeal to this Judge, but the Court will reject it. Reaffirmation agreements obviously were not favored by Congress and strict requirements must be met before such an agreement is enforceable. The requirement that the Debtor attend the reaffirmation hearing and receive the required admonitions has not been met and

---

**3.** Section 727(b) provides that a discharge discharges the debtor from all debts that arose before the date of the order for relief. Section 524(a)(1) provides that a discharge voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor, with respect to any debt discharged under § 727.

this Court cannot use its equitable powers to ignore the clear and plain provisions of the Code.

In *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 108 S.Ct. 963, 968–69, 99 L.Ed.2d 169 (1988), the Supreme Court of the United States stated, in regard to the equitable powers of the Bankruptcy Court, as follows:

... The short answer to these arguments is that whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code.

See also *Matter of Executive Office Centers, Inc.*, 96 B.R. 642, 648 (Bkrtcy.E.D.La.1988), where the court said:

... However, the equity powers of the bankruptcy courts are well defined and limited and may not be exercised in defiance of express rules of law. [citations omitted]

See also *Johnson v. First Nat. Bank of Montevideo, Minn.*, 719 F.2d 270, 273 (8th Cir.1983), where the Court stated:

... The appropriate starting point for our analysis is to recognize the general rule that a bankruptcy court possesses only the jurisdiction and powers expressly or by necessary implication conferred by Congress. *Chicago Bank of Commerce v. Carter*, 61 F.2d 986, 988 (8th Cir.1932); *First State Bank v. Sand Springs State Bank*, 528 F.2d 350, 353 (10th Cir.1976); *In Re Parr*, 13 B.R. 1010, 1021 (D.C.E.D.N.Y.1981). Although a bankruptcy court is essentially a court of equity, *Kenneally v. Standard Electronics Corp.*, 364 F.2d 642, 647 (8th Cir.1966), its broad equitable powers may only be exercised in a manner which is consistent with the provisions of the Code. *In Re J.M. Wells, Inc.*, 575 F.2d 329, 331 (1st Cir.1978); *In Re Texas Consumer Finance Corp.*, 480 F.2d 1261, 1265 (5th Cir.1973); *In Re Candor Diamond Corp.*, 26 B.R. 850, 851, (Bkrtcy.S.D.N.Y.1983).

See also *Rudd v. Laughlin*, 95 B.R. 705 (D.Neb.1988) and *In Re Rashid*, 97 B.R. 610 (W.D.Okl.1989).

In the case of *In re Churchill*, 89 B.R. 878, 879 (Bkrtcy.D.Colo.1988) the Bankruptcy Court for the District of Colorado held, in a case strikingly similar to the present case, that a reaffirmation agreement was invalid if the debtor did not attend the reaffirmation hearing, stating as follows:

... The elements of § 524(c) are statutory and, even if some of them seem redundant, superfluous, or even a waste of time and resources, such elements are, nevertheless, required by Congress. Courts are not to rewrite the laws, but to enforce them as written. If creditors want binding reaffirmation agreements, they must ensure that their debtors appear and be advised as required by §§ 524(c)(5) and (d) ...

See also *In Re Roth*, 43 B.R. 484 (D.C.N.D.Ill.1984).

Since there is no enforceable reaffirmation agreement the following results occur:

1. the debt to the Credit Union was discharged;

2. the judgment entered thereon was void;

3. the monies collected pursuant to this void judgment are due and owing to the debtor;

4. the monies are part of her estate; and,

5. the monies must be turned over to her Trustee, Lonnie D. Eck.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Oklahoma Central Credit Union turn over to Lonnie D. Eck, Trustee of the Debtor's estate, the sum of $3,830.00.[4]

---

**4.** If a creditor desires to obtain an enforceable     reaffirmation agreement, they must monitor the

reaffirmation hearings and make sure that the debtor attends. If the debtor does not attend, then the debt is discharged and the creditor can only pursue its remedies against the collateral. Monitoring the reaffirmation hearings is not a burdensome task. The Clerk of the Court takes the roll at said hearings and the creditor can check with the Clerk to see if the debtor attended. Also the creditor can attend the reaffirmation hearing to make sure the debtor attended. Requiring creditors to do this is much better than having the Court use its equitable powers and completely ignore § 524(c)(5) of the Code.